# WASMAN v. UNITED STATES

No. 83–173.   Argued March 20, 1984—Decided July 3, 1984

560

BURGER, C. J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–A, III–A, III–C, and IV, in which WHITE, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined, and an opinion with respect to Parts II–B and III–B, in which WHITE, REHNQUIST, and O'CONNOR, JJ., joined. POWELL, J., filed an opinion concurring in part and concurring in the judgment, in which BLACKMUN, J., joined, post, p. 573. BRENNAN, J., filed an opinion concurring in the judgment, in which MARSHALL, J., joined, post, p. 574. STEVENS, J., filed an opinion concurring in the judgment, post, p. 574.

*Jay R. Moskowitz* argued the cause and filed briefs for petitioner.

*Alan I. Horowitz* argued the cause for the United States. With him on the brief were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey,* and *Robert J. Erickson.*

CHIEF JUSTICE BURGER announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I, II–A, III–A, III–C, and IV, and an opinion with respect to Parts II–B and III–B, in which JUSTICE WHITE, JUSTICE REHNQUIST, and JUSTICE O'CONNOR joined.

We granted certiorari to decide whether the Due Process Clause of the Fifth Amendment was violated when a federal defendant was given a greater sentence after retrial following a successful appeal than he had been given after his original conviction because the sentencing court considered an intervening criminal conviction for acts committed prior to the original sentencing.

## I

Petitioner, an attorney, was indicted on four counts of mail fraud in violation of 18 U. S. C. § 1341. Prior to trial on these charges, he was indicted, tried, and convicted of the unrelated offense of knowingly and willfully making false statements in a passport application, in violation of 18 U. S. C. § 1542. At the sentencing hearing following petitioner's first conviction, the Government advised the court that charges were then pending against petitioner for mail fraud and that petitioner previously had been convicted for failure to file a tax return. Petitioner's counsel replied that it would be inappropriate for the court to consider the pending mail fraud charges in its sentencing on the passport conviction because petitioner had yet to respond to the charges.

The District Court Judge informed the parties that he would not consider the pending mail fraud charge in sentencing petitioner. The judge explained that he always considered prior convictions when sentencing a defendant but that he did not consider pending charges: "[I]f judges at the time of considering prior convictions also consider pending cases . . . then if that pending case resulted in a conviction, one of the sentences would inevitably have been a pyramided sentence." App. 26. Following this colloquy, the judge sentenced petitioner on the passport offense to two years of imprisonment, all but six months of which he suspended in favor of three years of probation.

Thereafter, pursuant to negotiations between petitioner and the Government, the Government dismissed the mail fraud indictment and substituted a one-count information charging petitioner with possession of counterfeit certificates of deposit, in violation of 18 U. S. C. § 480. Petitioner pleaded *nolo contendere* to this charge before another Federal District Court Judge in the Southern District of Florida and was sentenced to two years' probation. App. to Brief for Petitioner 3–15.

The Court of Appeals for what was then the Fifth Circuit subsequently reversed petitioner's first conviction on grounds not material here and remanded for a new trial. 641 F. 2d 326 (1981). Petitioner was retried on that charge and was again convicted. The presiding judge at the second trial was the same judge who had presided at petitioner's first trial on the passport offense and sentenced petitioner to the 2-year partially suspended sentence, with probation. This time, the judge sentenced petitioner to two years of imprisonment, none of which was suspended. The judge explained to petitioner and counsel for the Government that he was imposing a greater sentence because of petitioner's intervening conviction for possession of counterfeit certificates of deposit:

> "[W]hen I imposed sentence the first time, the only conviction on [petitioner's] record in this Court's eyes, this Court's consideration, was failure to file income tax returns, nothing else. I did not consider then and I don't in other cases either, pending matters because that would result in a pyramiding of sentences. At this time, he comes before me with two convictions. Last time, he came before me with one conviction." App. to Pet. for Cert. A–42.

The judge rejected an argument by petitioner's counsel that because the conduct underlying the conviction for possession of counterfeit certificates of deposit occurred prior to petitioner's original sentencing on the passport conviction, petitioner could not, under *North Carolina* v. *Pearce*, 395 U. S. 711 (1969), receive a sentence greater than that received for the original conviction.

The Court of Appeals for the Eleventh Circuit affirmed, holding that petitioner's increased sentence "was based on objective, factual new evidence not previously considered, that it was neither motivated by judicial vindictiveness nor reasonably perceivable as having been so motivated . . . ." 700 F. 2d 663, 670 (1983). It held that the District Court

"followed precisely the procedural steps of [*North Carolina* v. ] *Pearce*, affirmatively stating on the record his reason for enhancing the sentence, basing that reason on objective information concerning identifiable conduct of the defendant, and making the factual data on which his action was based part of the record so that its constitutional legitimacy [could] be fully reviewed on appeal." *Id.*, at 667.

The Court of Appeals rejected petitioner's argument that his sentence could not be increased after retrial based on the intervening counterfeiting conviction because the counterfeiting offense itself was not "conduct on the part of the defendant occurring after the time of the original sentencing," see *Pearce, supra*, at 726. The Court of Appeals read *Pearce* to be concerned only with "vindictive sentencing, not defendant misbehavior between trials." The Court of Appeals noted that there was "no evidence whatsoever" that petitioner's sentence was increased out of vindictiveness. The court expressly declined to follow the contrary holdings of the Courts of Appeals for the Second and Ninth Circuits that an enhanced sentence must be based upon *conduct* of the defendant occurring after the original sentencing. See *United States* v. *Markus*, 603 F. 2d 409 (CA2 1979); *United States* v. *Williams*, 651 F. 2d 644 (CA9 1981).

We granted certiorari, 464 U. S. 932 (1983), to resolve the conflict among the Circuits as to the meaning of this Court's holding in *Pearce*.

## II

### A

It is now well established that a judge or other sentencing authority is to be accorded very wide discretion in determining an appropriate sentence. The sentencing court or jury must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed. Justice Black

made this point when, writing for the Court in *Williams* v. *New York*, 337 U. S. 241, 247 (1949), he observed that

> "[h]ighly relevant—if not essential—to [the] selection of an appropriate sentence is the possession of the fullest information possible concerning the defendant's life and characteristics."

Allowing consideration of such a breadth of information ensures that the punishment will suit not merely the offense but the individual defendant. *Ibid.*

In *Pearce, supra,* however, the Court recognized at least one limitation on the discretion of the sentencing authority where a sentence is increased after reconviction following a successful appeal. Two separate cases were before the Court in *Pearce.* In both cases, the defendants successfully appealed their original convictions and on retrial received greater sentences than they had received originally. The Court held that neither the Double Jeopardy Clause nor the Equal Protection Clause barred imposition of the greater sentences after the reconvictions of the defendants. However, it held that the Due Process Clause of the Fourteenth Amendment prevented increased sentences actually motivated by vindictive retaliation by the judge: "Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." 395 U. S., at 725. Because fear of such vindictiveness might chill a defendant's decision to appeal or to attack his conviction collaterally, the Court went on to say that "due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge." *Ibid.* (footnote omitted).

To prevent actual vindictiveness from entering into a decision and allay any fear on the part of a defendant that an increased sentence is in fact the product of vindictiveness, the Court fashioned what in essence is a "prophylactic rule," see *Colten* v. *Kentucky*, 407 U. S. 104, 116 (1972), that "when-

ever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear." 395 U. S., at 726. This rule has been read to "[apply] a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence." *United States* v. *Goodwin,* 457 U. S. 368, 374 (1982). The rationale for requiring that "the factual data upon which the increased sentence is based" be made part of the record, of course, is that the "constitutional legitimacy," of the enhanced sentence may thereby be readily assessed on appeal. *Ibid.*

In *Pearce,* the State had offered "no evidence" whatever to justify respondent Rice's increased sentence; it had not even "attempted to explain or justify" the greater penalty. 395 U. S., at 726. Similarly, the State had advanced no reason for Pearce's sentence "beyond the naked power to impose it," *ibid.* Finding the record barren of any evidence to rebut the presumption of vindictiveness and support the increased sentences in either of the two cases in *Pearce,* the Court affirmed the judgments granting relief.

## B

In only one other circumstance has the Court identified a need to indulge a presumption of vindictiveness of the kind imposed in *Pearce.* In *Blackledge* v. *Perry,* 417 U. S. 21 (1974), Perry, while in state prison, was involved in a fight with a fellow inmate, and was charged with the misdemeanor offense of assault with a deadly weapon. He was convicted in the State's District Court Division and sentenced to a 6-month prison term to run consecutively to the term he was then serving. He appealed to the County Superior Court, where, under applicable state law, he had a right to a trial *de novo.*

After Perry filed his notice of appeal, but before trial, the prosecutor obtained an indictment against Perry for the felony offense of assault with a deadly weapon with intent to kill and inflict serious bodily injury. Perry pleaded guilty to the

felony offense and was sentenced to a term of five to seven years' imprisonment to run consecutively with the sentence he was then serving. The effect of this was to increase Perry's sentence by the 17 months that he had already served under the sentence imposed by the District Court Division.

We held that the indictment for the felony offense was impermissible under the Due Process Clause of the Fourteenth Amendment, stating that "the opportunities for vindictiveness in this situation are such as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case." *Id.*, at 27. The prosecutor, we noted, "clearly has a considerable stake in discouraging convicted misdemeanants from appealing and . . . obtaining a trial *de novo* . . . ." *Ibid.*

Although there was no affirmative evidence tendered that the prosecutor brought the felony charge in bad faith, we agreed that, because the record was devoid of any explanation for the new indictment, relief should be granted. Consistent with *Pearce*, however, we explicitly observed that a different disposition would have been called for had the State advanced a legitimate nonvindictive justification for the greater charge. 417 U. S., at 29, n. 7. This acknowledgment, of course, was no more than a reaffirmation that *Pearce* established a rebuttable presumption of vindictiveness, not an absolute prohibition on enhancement of sentence.

Because of its "severity," see *Goodwin, supra,* at 373, the Court has been chary about extending the *Pearce* presumption of vindictiveness when the likelihood of vindictiveness is not as pronounced as in *Pearce* and *Blackledge*. This reluctance is understandable for, as we have noted, operation of the presumption often "block[s] a legitimate response to criminal conduct." 457 U. S., at 373. In the four following cases, we expressly declined invitations to extend the presumption.

We saw no need for application of the presumption in the context of Kentucky's two-tier trial system. *Colten*

v. *Kentucky*, *supra*. Under Kentucky law, a defendant convicted of a misdemeanor in the inferior court had the right to a trial *de novo* in a court of general jurisdiction. We rejected the contention in *Colten* that the *de novo* tribunal was constitutionally prohibited from imposing a greater sentence than that imposed in the original trial. We held that "[t]he possibility of vindictiveness, found to exist in *Pearce*, [was] not inherent in the Kentucky two-tier system." *Id.*, at 116. While we believed that the prophylactic rule was unnecessary, we left open the possibility that a defendant might prove actual vindictiveness and thereby establish a due process violation; we held only that the Kentucky trial *de novo* system "as such" was not unconstitutional. *Id.*, at 119.

Similarly, in *Chaffin* v. *Stynchcombe*, 412 U. S. 17 (1973), we rejected the need for the prophylactic *Pearce* presumption because we perceived as *"de minimis"* the possibility that an increased sentence by a jury upon reconviction after a new trial would be motivated by vindictiveness. Not only was the second jury in *Chaffin* unaware of the prior conviction, but in contrast to the judge and the prosecutor in *Pearce* and *Blackledge*, it was thought unlikely that a jury would consider itself to have a "personal stake" in a prior conviction or a "motivation to engage in self-vindication." 412 U. S., at 27. We emphasized in *Chaffin* that

> *"Pearce* was not written with a view to protecting against the mere possibility that, once the slate is wiped clean and the prosecution begins anew, a fresh sentence may be higher for some valid reason associated with the need for flexibility and discretion in the sentencing process." *Id.*, at 25.

*Pearce*, we explained, was only "premised on the apparent need to guard against *vindictiveness* in the resentencing process." 412 U. S., at 25 (emphasis in original). Consequently, as in *Colten*, we noted that jury sentencing used as a means of "punishing or penalizing the assertion of protected rights" might violate due process. 412 U. S., at 32, n. 20.

In *Bordenkircher* v. *Hayes*, 434 U. S. 357 (1978), we held that due process is not implicated when a prosecutor threatens to seek conviction on a greater offense if the defendant does not plead guilty and in fact does so when the defendant proceeds to trial. We declined to characterize this conduct as "punishment or retaliation" offensive to due process, *id.*, at 363, instead noting that such was a mere byproduct of the "'give-and-take negotiation common in plea bargaining.'" *Id.*, at 362 (quoting *Parker* v. *North Carolina*, 397 U. S. 790, 809 (1970) (BRENNAN, J., dissenting). As in *Colten* and *Chaffin*, we did not rule out, however, the possibility that a defendant could establish a due process violation by proof of actual vindictiveness. See *United States* v. *Goodwin*, 457 U. S., at 380, n. 12.

Most recently, we held in *United States* v. *Goodwin*, *supra*, that the *Pearce* presumption of vindictiveness is unwarranted where a prosecutor adds a felony charge before trial to a defendant's misdemeanor charge after the defendant demands a jury trial on the misdemeanor charge. We thought it highly unlikely "that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest." 457 U. S., at 384. Consistent with our earlier cases, we again explicitly recognized "the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's charging decision was motivated by a desire to punish him for doing something that the law plainly allowed him to do." *Ibid.* (footnote omitted).

If it was not clear from the Court's holding in *Pearce*, it is clear from our subsequent cases applying *Pearce* that due process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by *actual vindictiveness* toward the defendant for having exercised guaranteed rights. In *Pearce* and in *Blackledge*, the Court "presumed" that the increased sentence and charge were the products of actual vindictiveness aroused by the defendants' appeals. It held that the defendants' right to due process

was violated not because the sentence and charge were enhanced, but because there was no evidence introduced to rebut the presumption that actual vindictiveness was behind the increases; in other words, by operation of law, the increases were deemed motivated by vindictiveness. In *Colten, Chaffin, Bordenkircher*, and *Goodwin*, on the other hand—where the presumption was held not to apply—we made clear that a due process violation could be established only by proof of actual vindictiveness.

In sum, where the presumption applies, the sentencing authority or the prosecutor must rebut the presumption that an increased sentence or charge resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness.

## III

### A

Here, petitioner in effect received a greater sentence of confinement following retrial than he had originally received. This was sufficient to engage the presumption of *Pearce*. In sharp contrast to *Pearce* and *Blackledge*, however, the trial judge here carefully explained his reasons for imposing the greater sentence. The care with which the trial judge approached the resentencing is clear from the record, and it bears repeating:

> "[W]hen I imposed sentence the first time, the only conviction on [petitioner's] record in this Court's eyes, this Court's consideration, was failure to file income tax returns, nothing else. I did not consider then and I don't in other cases either, pending matters because that would result in a pyramiding of sentences. At this time he comes before me with two convictions. Last time, he came before me with one conviction."

Consideration of a criminal conviction obtained in the interim between an original sentencing and a sentencing

after retrial is manifestly legitimate. This amply rebuts any presumption of vindictiveness. Here, the trial judge's justification is plain even from the record of petitioner's first sentencing proceeding; the judge informed the parties that, although he did not consider pending *charges* when sentencing a defendant, he always took into account prior criminal *convictions*. This, of course, was proper; indeed, failure to do so would have been inappropriate.

Petitioner does not charge that the judge was vindictive. Rather, he argues that any consideration of his intervening conviction was foreclosed by the plain language of *Pearce*. Petitioner points to the passage in *Pearce* stating that the reasons posited by a court for increasing a defendant's sentence on retrial "must be based upon objective information concerning identifiable *conduct* on the part of the defendant occurring *after* the time of the original sentencing proceeding." 395 U. S., at 726 (emphasis added). His contention is that the "conduct" for which he was convicted, *i. e.*, possession of counterfeit certificates of deposit, occurred prior to the time of his original sentencing proceeding and thus could not be considered by the trial judge.

*Pearce* is not without its ambiguities; the passage recited by petitioner, for example, is said by petitioner to conflict with the following language in the same section of the opinion:

> "A man who is retried after his first conviction has been set aside may be acquitted. If convicted, he may receive a shorter sentence, he may receive the same sentence, or he may receive a longer sentence than the one originally imposed. . . .
>
> ". . . A trial judge is not constitutionally precluded, in other words, from imposing a new sentence, whether greater or less than the original sentence, in the light of *events* subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, con-

duct, and mental and moral propensities.' *Williams* v. *New York*, 337 U. S. 241, 245. Such information may come to the judge's attention from evidence adduced at the second trial itself, from a new presentence investigation, from the defendant's prison record, or possibly from other sources." *Id.*, at 722–723 (emphasis added).

### B

In addition, two of the separate opinions in *Pearce* suggest that the Court did not intend to confine the sentencing authority's consideration to "conduct" occurring subsequent to the first sentencing proceeding. Justice Douglas characterized the Court's holding as allowing a greater sentence to be justified by "events subsequent to the first trial," and by "information that has developed after the initial trial." *Id.*, at 736, and n. 6 (concurring opinion). Justice Black did not refer to a temporal limitation on the information that could be considered. He appeared to believe that the sole requirement imposed by the majority was that the "state courts articulate their reasons for imposing particular sentences." *Id.*, at 741 (opinion concurring in part and dissenting in part).

### C

We find it unnecessary, however, to reconcile these apparent ambiguities. In the two cases before the Court in *Pearce* there was no asserted explanation or justification for the heightened sentence. This case, on the other hand, squarely presents the question of the scope of information that may be relied upon by a sentencing authority to justify an increased sentence after retrial.

We conclude that any language in *Pearce* suggesting that an intervening conviction for an offense committed prior to the original sentencing may not be considered upon sentencing after retrial, is inconsistent with the *Pearce* opinion as a whole. There is no logical support for a distinction between

"events" and "conduct" of the defendant occurring after the initial sentencing insofar as the kind of information that may be relied upon to show a nonvindictive motive is concerned. This is clear from *Williams* v. *New York*, 337 U. S. 241 (1949), which provides that the underlying philosophy of modern sentencing is to take into account the person as well as the crime by considering "information concerning every aspect of a defendant's life." *Id.*, at 250.

Even without a limitation on the type of factual information that may be considered, the requirement that the sentencing authority or prosecutor detail the reasons for an increased sentence or charge enables appellate courts to ensure that a nonvindictive rationale supports the increase. A contrary conclusion would result in the needless exclusion of relevant sentencing information from the very authority in whom the sentencing power is vested. The response of the Court of Appeals to petitioner's argument was entirely correct: "No reason exists for applying a phrase in the *Pearce* guidelines to circumstances bearing no relation to the purpose of those guidelines." 700 F. 2d, at 668.

## IV

We hold that after retrial and conviction following a defendant's successful appeal, a sentencing authority may justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings. 395 U. S., at 726.*

*Affirmed.*

---

*The Government argues that the "temporal limitation" imposed by *Pearce* on information that may be considered by a sentencing authority is unnecessary to advance the policies underlying that decision. However, the question whether an increased sentence can be justified by reference to an event or conduct occurring before the original sentencing is not presented in this case.

JUSTICE POWELL, with whom JUSTICE BLACKMUN joins, concurring in part and concurring in the judgment.

I join all but Parts II–B and III–B of the Court's opinion. I write to emphasize my view that this case involves a straightforward application of the Court's holding in *North Carolina* v. *Pearce*, 395 U. S. 711 (1969). The trial judge applied *Pearce* with commendable care, drawing a distinction at the sentencing stage of the first trial between undecided pending charges and prior convictions. At the sentencing stage following the second trial, the judge stated on the record that "[a]t this time, [petitioner] comes before me with two convictions. Last time, he came before me with one conviction." App. to Pet. for Cert. A–42.

Petitioner insists that this explanation of the increased sentence is insufficient because it does not, in the words of *Pearce*, "concer[n] identifiable *conduct* on the part of the [petitioner] occurring after the time of the original sentencing proceeding." 395 U. S., at 726 (emphasis added). He argues that the "conduct" was his prior crime; not the conviction.

At a different point in *Pearce*, however, the Court stated that "a new sentence, whether greater or less than the original sentence, [may be imposed] in the light of *events* subsequent to the first trial that may have thrown new light upon the defendant's 'life, health, habits, conduct, mental and moral propensities.'" *Id.*, at 723 (emphasis added). The difference in language relied upon by petitioner is a matter of semantics—not substance. As the Court of Appeals stated, petitioner's argument would "exal[t] words above substance," 700 F. 2d 663, 667 (1983). When read properly, there simply is no conflict in the *Pearce* language.*

---

*Indeed in most situations—such as here—relevant conduct of the defendant is subsumed in the term "events." Of course, there may be subsequent events—as well as subsequent conduct—that are irrelevant to any question of a sentence enhancement. Clearly this is not such a case.

The *Pearce* presumption is not simply concerned with actual vindictiveness, but also was intended to protect against reasonable apprehension of vindictiveness that could deter a defendant from appealing a first conviction.   395 U. S., at 725.   Both of these concerns are fully met in this case.   It would be difficult to think of an event or occurrence more relevant to the determination of a proper sentence than a criminal conviction obtained in the interim between an original sentencing and a sentencing following retrial.

I view the portions of the Court opinion that I have joined as being fully consistent with the foregoing views.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

Substantially for the reasons expressed by JUSTICE POWELL in his separate opinion, I concur in the judgment.

JUSTICE STEVENS, concurring in the judgment.

The reason I am unable to join the opinion that THE CHIEF JUSTICE has authored is that it interprets *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), as resting entirely on a concern with the actual vindictiveness of the sentencing judge and does not identify the interest in protecting the defendant against the reasonable apprehension of vindictiveness that might deter him from prosecuting a meritorious appeal.   See *id.,* at 724–725.   "The rationale of our judgment in the *Pearce* case, however, was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. Rather, we emphasized that 'since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.'"   *Blackledge* v. *Perry,* 417 U. S. 21, 28 (1974) (quoting *Pearce,* 395 U. S., at 725).   What I believe to be the correct reading of *Pearce* is set forth in Judge

Markey's able opinion for the Court of Appeals. See 700 F. 2d 663 (CA11 1983).

Because the flaw in THE CHIEF JUSTICE's opinion infects its Parts II–A and III–C as well as Parts II–B and III–B, I cannot join JUSTICE POWELL's opinion, though I, like JUSTICE BRENNAN, JUSTICE MARSHALL, JUSTICE BLACK-MUN, and JUSTICE POWELL, would decide this case on the ground that affirmance of a prior conviction after the initial sentencing constitutes the type of intervening event that may be considered by a trial judge as a ground for enhancing a sentence after a successful appeal.