UNITED STATES COURT OF APPEALS
 FOR THE FIRST CIRCUIT
 

No. 92-2184 

 ROBERT C. HURLBURT,

 Plaintiff, Appellant,

 v.

 MICHAEL J. CUNNINGHAM, ET AL.,

 Defendants, Appellees.

 

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF NEW HAMPSHIRE

 [Hon. Martin F. Loughlin, Senior U.S. District Judge]
 

 

 Before

 Breyer, Chief Judge,
 
 Torruella and Cyr, Circuit Judges.
 

 

Robert C. Hurlburt on brief pro se.
 
Jeffrey R. Howard, Attorney General, and Amy Vorenberg, Assistant
 
Attorney General, on brief for appellees.

 

 May 26, 1993
 

 Per Curiam. After a jury trial in a New Hampshire
 

superior court, Robert Hurlburt was convicted of being a

felon in possession of a firearm in violation of state law,

and sentenced to an extended term of 7 1/2 to 15 years by the

trial judge (Nadeau, J.). The New Hampshire Supreme Court

reversed his conviction because of an erroneous evidentiary

ruling. See State v. Hurlburt, 132 N.H. 674, 569 A.2d 1306,
 

1306-07 (1990). A jury trial was had before a different

state court judge (Temple, J.). The jury again convicted

Hurlburt, but this time Judge Temple imposed an extended term

of 10 to 30 years. The New Hampshire Supreme Court affirmed.

See State v. Hurlburt, 135 N.H. 143, 603 A.2d 493 (1991),
 

cert. denied, 112 S. Ct. 1770 (1992). Hurlburt then
 

petitioned for a writ of habeas corpus under 28 U.S.C. 

2254, which was denied. Hurlburt v. Cunningham, 802 F. Supp.
 

585 (D.N.H. 1992). We affirm. 

 We need discuss here only one of the issues which

Hurlburt raises in his appeal.1 He claims that his

 

1. The remaining claims are meritless. First, Hurlburt
argues that he did not voluntarily and knowingly waive his
Miranda rights during a post-arrest interview. He bases this
 
claim primarily on an error in the transcript from his first
trial. This matter was fully explored and correctly resolved
at a suppression hearing before his second trial. Second, he
claims that his failure to challenge the state's alleged
failure to prove that he had been incarcerated twice
previously on sentences of one year or more so as to subject
him to enhanced sentencing under state law should be excused
because of ineffective assistance of counsel. The sentencing
transcript shows that Hurlburt himself made this precise
argument to the court at sentencing, and so his failure to

 -2-

increased sentence after retrial is unlawful under North
 

Carolina v. Pearce, 395 U.S. 711 (1969). In Pearce, the
 

Supreme Court found that imposing an increased sentence after

retrial on a defendant who had successfully appealed a first

conviction would violate due process of law if the increase

were motivated by vindictiveness. It stated:

 Due process of law, then, requires that
 vindictiveness against a defendant for having
 successfully attacked his first conviction must
 play no part in the sentence he receives after a
 new trial. . . . In order to assure the absence of
 such a motivation, we have concluded that whenever
 a judge imposes a more severe sentence upon a
 defendant after a new trial, the reasons for his
 doing so must affirmatively appear. Those reasons
 must be based upon objective information concerning
 identifiable conduct on the part of the defendant
 occurring after the time of the original sentencing
 proceeding. And the factual data upon which the
 increased sentence is based must be made part of
 the record, so that the constitutional legitimacy
 of the increased sentence may be fully reviewed on
 appeal.

Id. at 725-26. Essentially, Pearce established a
 

"presumption of vindictiveness, which may be overcome only by

objective information in the record justifying the increased

sentence." United States v. Goodwin, 457 U.S. 368, 374
 

(1982). 

 

raise it in his direct appeal, at which he submitted a pro se
 
brief supplementing that of his appointed counsel, must have
been intentional and is thus not attributable to ineffective
assistance of counsel. Third, he suggests that he exhausted
his state remedies on the issue whether the audiotape of the
first trial should have been enhanced, but the record shows
that he failed to raise this issue in his direct appeal.

 -3-

 The district court found that the Pearce
 

presumption applied even though a different judge had imposed

the increased sentence.2 But it concluded that the judge's

statement of reasons was sufficient to rebut the presumption.

802 F. Supp. at 594. Although the state appears to have

argued below that the presumption should not apply, on appeal

 

2. Although Pearce involved a case in which a different
 
judge imposed the harsher sentence after retrial, the Supreme
Court has indicated that Pearce itself is to be interpreted
 
as establishing a presumption of vindictiveness only in cases
involving a single sentencer. See Texas v. McCullough, 475
 
U.S. 134, 140 n.3 (1986). Our research indicates that
decisions by the circuit courts of appeals after McCullough
 
have uniformly held that the Pearce presumption does not
 
apply to the two-sentencer situation. See Rock v. Zimmerman,
 
959 F.2d 1237 (3d Cir.), cert. denied, 112 S. Ct. 3036
 
(1992); United States v. Perez, 904 F.2d 142 (2d Cir.), cert.
 
denied, 498 U.S. 905 (1990), and cert. denied, 111 S. Ct.
 
1085 (1991); Gauntlett v. Kelley, 849 F.2d 213 (6th Cir.
 
1988). Some earlier cases, however, applied the presumption
where a different judge had imposed the more severe sentence.
See, e.g., United States v. Whitley, 734 F.2d 994 (4th Cir.
 
1984), cert. denied, 474 U.S. 873 (1985); United States v.
 
Floyd, 519 F.2d 1031 (5th Cir. 1975); but see Holloway v.
 
Lockhart, 754 F.2d 252 (8th Cir.), cert. denied, 474 U.S. 836
 
(1985). In Mele v. Fitchburg District Court, 884 F.2d 5 (1st
 
Cir. 1989), this court held that the Pearce presumption did
 
not apply where a judge imposed a more severe sentence after
a jury trial than had been imposed by a different judge after
a bench trial. We held that the bench trial in the two-tier
Massachusetts system was analogous to a guilty plea, so that,
under Alabama v. Smith, 490 U.S. 794 (1989), the presumption
 
did not apply. We also commented that "in this case two
different judges imposed sentence, showing even less
likelihood of possible vindictiveness than in Smith, where
 
the same judge, after being found to be in error on appeal,
was responsible for resentencing." Id. at 10. We expressly
 
stated, however, that we were not deciding that "whenever a
 
second judge is responsible for resentencing there should
arise no presumption of vindictiveness. We are relying on
this factor in light of the particular circumstances of this
case." Id. n.4 (emphasis in original). 
 

 -4-

it accepts the district court's reasoning as "legally sound

and well supported" and urges this court instead to affirm on

the ground that the presumption has been rebutted. Under

these circumstances, and because we conclude that objective

information in the record here would rebut any Pearce
 

presumption applied, we do not decide whether the presumption

should apply whenever a different judge imposes a harsher

sentence after retrial, but only assume for the sake of

argument that it does. 

 In imposing a sentence of 10 to 30 years on

Hurlburt after his retrial, Judge Temple stated:

 Mr. Hurlburt, in view of your record that has been
 presented to me here today and by virtue of the two
 reports from the Department of Corrections, and
 what I observed and listened to during the trial as
 well, I think if there ever was a case that the
 maximum enhanced sentence would apply, this is it.

 Accordingly, the sentence in this case is that you
 are sentenced to the New Hampshire State Prison for
 an extended term pursuant to Chapter 651:6 for not
 more than 30 years, nor less than 10 years.

In its decision, the district court focused on Judge Temple's

reference to the two presentence reports, which contained a

copy of Hurlburt's conviction for possessing the implements

of escape. The conviction had been obtained after Hurlburt

was originally sentenced by Judge Nadeau, but before his

sentencing by Judge Temple. Acknowledging that Judge Temple

did not specifically refer to the intervening conviction, the

district court found nonetheless that Judge Temple's

 -5-

reference to the reports met the requirement that an

increased sentence be based on "objective information that

affirmatively appears of record," that there was "no reason

to believe that the conviction was not factored into the

sentencing decision," and that therefore the Pearce
 

presumption had been rebutted. 802 F. Supp. at 595. In

holding that the presumption had been rebutted, the district

court relied on Wasman v. United States, 468 U.S. 559, 569-70
 

(1984), which had held that a sentencing judge could consider

a criminal conviction obtained between an original sentencing

and a sentencing after retrial in imposing an increased

sentence and that such consideration would "amply" rebut any

presumption of vindictiveness. 

 Hurlburt argues that Judge Temple's "bare allusion"

to the presentence reports does not satisfy the requirement

that he affirmatively state his reasons for imposing a more

severe penalty than Judge Nadeau and that those reasons be

based on objective information concerning identifiable

conduct by Hurlburt. Clearly, it would have been preferable

for Judge Temple to have mentioned the intervening conviction

explicitly if he had relied on it to justify the sentence he

imposed, especially if it were the sole justification

proffered for the increased sentence. Here, however, we

believe that his lack of precision does not render his

statement of reasons inadequate under Pearce. At the outset,
 

 -6-

we note that, unlike Pearce, this is not a case in which the
 

state has offered no reasons at all for imposing an increased

sentence. See Wasman, 468 U.S. at 565 (the presumption of
 

vindictiveness was unrebutted in Pearce because the state had
 

offered no reason at all to explain the increased sentence).

Judge Temple did give reasons for imposing the sentence he

did. Moreover, since Judge Temple was not the original

sentencer, he cannot be expected to have explained precisely

why the sentence he imposed was greater than the one imposed

by Judge Nadeau -- to do so, he would have to have been privy

to Judge Nadeau's thoughts at the time he imposed the lesser

sentence.3 Finally, we think that focusing only on the

 

3. Our point is illustrated by reference to the explanation
given for an increased sentence by the trial judge in Wasman.
 
There, one judge had imposed both of the sentences in
question, and had explained his decision to impose a harsher
sentence after retrial as follows: "[W]hen I imposed
sentence the first time, the only conviction on
[petitioner's] record in this Court's eyes, . . . was failure
to file income tax returns, nothing else. I did not consider
then and I don't in other cases either, pending matters
because that would result in a pyramiding of sentences. At
this time, he comes before me with two convictions." 468
U.S. at 562. Since there is nothing in the record to show
that Judge Temple could have known what motivated Judge
Nadeau to impose the sentence he did, it is unrealistic to
expect him to compare his and Judge Nadeau's motivations as
precisely as did the judge in Wasman to explain why he
 
imposed a lengthier sentence than Judge Nadeau. The
difficulty which, we imagine, a second sentencer would
invariably have in explaining his motivation relative to the
motivation of the original sentencer suggests one reason why
the Pearce presumption may ultimately be confined to the one-
 
sentencer situation. The root of this problem in the two-
sentencer context is, of course, the assumption that the
second, harsher sentence represents an "increase" in the
first sentence which must be explained if the presumption is

 -7-

issue of the intervening conviction is too narrow an

approach. Judge Temple's statement of reasons was broader.

Altogether, he gave three reasons for imposing the sentence

he did: (1) Hurlburt's "record" as "presented to [him]" at

the sentencing hearing; (2) the two presentence reports; and

(3) "what I observed and listened to during the trial." 

 Our review of the sentencing transcript, which

amplifies Judge Temple's abbreviated statement of reasons,

convinces us that the district court's conclusion that the

Pearce presumption has been rebutted was correct. First,
 

Judge Temple stated that he relied on both presentence

reports in imposing sentence on Hurlburt. During the

sentencing hearing, Judge Temple also stated that he had read

both of the reports. The updated report contains an

assessment of Hurlburt's prospects for rehabilitation, an

issue about which the first report (the only report available

to Judge Nadeau) is silent. Based on an interview conducted

after the second trial, the updated report recites instances

in which Hurlburt gave the probation officer inaccurate or

misleading information. Thus, the updated report indicated

that, even after his second conviction, Hurlburt was

 

to be rebutted, whereas in reality the differing sentence may
simply represent the different sentencing perspective which a
different judge brings to bear on a given sentencing
situation. Compare Texas v. McCullough, 475 U.S. 134, 140
 
(1986) (where different sentencers impose the varying
sentences, a sentence "increase" cannot truly be said to have
taken place). 

 -8-

continuing the pattern of deceptive behavior noted in the

first report prepared after his first conviction. (The first

report had concluded that Hurlburt was a "con-man only too

willing to deceive others through lying and his use of

aliases . . . .") The second report concludes that Hurlburt

has "no redeeming qualities that would make him an asset to

remain in the community," that his prospects for

rehabilitation were "dismal," and that Hurlburt should

participate in "intense psychological counseling" while

incarcerated. As the Supreme Court has made clear, conduct

which sheds light on a defendant's "moral character and

suitability for rehabilitation" may be used to rebut the

Pearce presumption. See Alabama v. Smith, 490 U.S. 794, 801-
 

02 (1989). 

 Furthermore, the presentence reports do contain

information about Hurlburt's conviction for possessing the

implements of escape which was obtained after his first

sentencing. The first report makes specific reference to

Hurlburt's pending indictment on that charge, and a copy of

his ensuing conviction is attached to the report. At the

sentencing hearing, Judge Temple not only stated that he had

read the reports, but he also evidenced his awareness that

Hurlburt's convictions were attached to the first report,

suggesting that he had in fact reviewed them. In addition,

the implements-of-escape conviction was specifically

 -9-

mentioned when the question of crediting the time which

Hurlburt had already served arose at sentencing. The state

explained that Hurlburt had received credit at his first

sentencing for the post-arrest time he had served, that it

assumed that he would be entitled to credit for all of the

time served on "this charge", and that it did not believe

that any time served for "[t]he other charge for which he was

convicted following this, and on which was imposed a one and

a half to three years consecutive [sentence] . . . has been

credited . . . [b]ut it should only be credited towards one

of the offenses."4 In response, Judge Temple evidenced no

confusion as to which "other" conviction the state meant, but

asked only whether the exact days to be credited had been

calculated. After Hurlburt's counsel gave the figure of 830

days, Judge Temple took a brief recess. When he returned, he

announced his reasons for imposing the maximum possible

sentence, which are quoted above, and immediately thereafter

stated that Hurlburt would be allowed pretrial confinement

credit of 830 days. We conclude, therefore, that Judge

Temple, having read the presentence reports and having been

reminded of the intervening conviction immediately before he

 

4. Since the only intervening conviction evidenced by the
record for which a 1 1/2 to 3 year consecutive sentence was
imposed was Hurlburt's implements-of-escape conviction, the
state could only have been referring to that conviction. 

 -10-

imposed sentence, could well have taken that conviction into

account in imposing the sentence he did. 

 In any event, Judge Temple made clear that the

sentence he imposed was also based on the "record that has

been presented to me here today . . . and what I observed and

listened to during the trial as well . . . ." Arguably, the

word "record" encompasses more than just Hurlburt's criminal

record, which was described in detail at the sentencing

hearing, but includes as well any pattern of conduct by

Hurlburt which came to Judge Temple's attention.5 At

sentencing, the state alluded to misrepresentations by

Hurlburt which it had "already recounted to the court"

(presumably at some other time), and to Hurlburt's apparent

practice, in connection with both the first and second

trials, of making claims which he alleged he could support by

affidavit, but never did. The state also reminded the court

of threatening letters which Hurlburt had written to a key

prosecution witness, as to which there had been testimony at

the second trial. It suggested that Hurlburt had lied at the

sentencing hearing itself when he told Judge Temple that he

had not made the misleading statements attributed to him in

 

5. The criminal record discussed at the sentencing hearing
consisted of Hurlburt's pre-1988 record, and we assume that
the same record was presented to Judge Nadeau. To the extent
that we need to inquire into what was different at this
sentencing which would explain the different sentence,
therefore, reliance on that record is not sufficient. 

 -11-

the updated presentence report, arguing that the statements

in the report could only have come from Hurlburt and citing

as corroboration in one instance statements made by Hurlburt

during a deposition held before the second trial.6 In

connection with its review of the cited instances of

deceptive or obstructive conduct by Hurlburt, the state

agreed with the probation officer's assessment that

"everything points to absolutely no hope for the

rehabilitation of this man. There is a need to protect

society from this person, and the need to punish him for his

conduct and incarcerate him for a period of time that will

give full consideration and full weight to his extensive

criminal involvement and his extensive efforts to perpetrate

a fraud on this Court at every opportunity." Thus, the state

argued at length and vigorously that Hurlburt's persistent

deceptive and obstructive conduct, some of which came to

light in the presentence reports and at trial, had to be

taken into account in sentencing. Given Judge Temple's

statement that he had based Hurlburt's sentence on the

presentence reports, on the record presented to him at the

sentencing hearing and on what he saw and heard at trial, we

 

6. The county attorney representing the state also described
certain allegations which Hurlburt was alleged to have made
against her personally and against the county attorney's
office, but Judge Temple stated that he would not take those
allegations, which were not otherwise detailed in the record,
into consideration in sentencing Hurlburt. For that reason,
they are also irrelevant to this discussion.

 -12-

think it reasonable to conclude that Judge Temple considered

that conduct in imposing the sentence he did on Hurlburt. 

 Finally, we think it significant that the state

objected vigorously to the probation department's

recommendation that Hurlburt be sentenced to 7 1/2 to 15

years, which was the sentence imposed by Judge Nadeau. It

argued that the probation officer, who had recommended the

"maximum incarceration term", had not understood that the

state enhanced sentencing statute permitted a term of 10 to

30 years. The state told Judge Temple that it had asked that

that sentence be imposed after the first trial. It

acknowledged that Judge Nadeau had only imposed 7 1/2 to 15

years, but argued for the enhanced sentence because "that is

the sentence that . . . should be imposed" under the state

enhanced sentencing statute. When Hurlburt stated that Judge

Temple could only impose the sentence given by Judge Nadeau,

Judge Temple asked whether Hurlburt wanted "to be heard as to

what the sentence should be[.]" Hurlburt's only response was

that "I feel that the Court has already made up its mind. . .

. I would not even at this juncture venture to request any

type of sentence. I would rely upon the sound discretion and

intelligence of the Court." Essentially, therefore, the

state argued that it had always believed that imposing the

enhanced sentence would be the correct sentencing result and

that Judge Nadeau's sentence had not accounted adequately for

 -13-

Hurlburt's history and character, and Hurlburt made no

counterargument. In a somewhat different context, we

indicated that imposing a sentence after successful appeal of

a conviction for the express purpose of bringing "original

sentencing intentions to fruition" was permissible. See
 

United States v. Pimienta-Redondo, 874 F.2d 9, 13 (1st Cir.),
 

cert. denied, 493 U.S. 890 (1989) (declining to apply the
 

Pearce presumption where the district court reimposed the
 

original sentence after remand despite reversal on one count

by the court of appeals). To the extent that Judge Temple

may be inferred to have believed that the state was right and

that Judge Nadeau's sentence had been too low, that

motivation would be permissible and would provide a

nonvindictive reason for imposing the increased sentence.

 As this discussion shows, the presentence reports

and the sentencing transcript contain "objective information

concerning identifiable conduct" of Hurlburt's consistent

with Judge Temple's stated reasons which would support the

increased sentence Hurlburt received. Accordingly, we

conclude that Judge Temple's stated reasons for imposing an

extended term of 10 to 30 years were "on-the-record, wholly

logical, nonvindictive reason[s] for the sentence" which

rebut the Pearce presumption. See McCullough, 475 U.S. at
 

140.

 -14-

 Accordingly, the judgment of the district court is

affirmed.
 

 -15-