Olarenwaju A. **YEMSON**, Appellant,

v.

**UNITED STATES**, Appellee.

No. 98–CO–1604.

District of Columbia Court of Appeals.

Submitted Sept. 28, 2000.
Decided Jan. 4, 2001.

---

John O. Iweanoge, Washington, DC, appointed by the court, was on the brief, for appellant.

Wilma A. Lewis, United States Attorney, and John R. Fisher, Mary Patrice Brown, Michael W. Wright, and Catherine J. Motz, Assistant United States Attorneys, were on the brief, for appellee.

Before TERRY and WASHINGTON, Associate Judges, and NEWMAN, Senior Judge.

TERRY, Associate Judge:

Appellant Yemson entered guilty pleas to one felony count of credit card fraud,[1] one misdemeanor count of receiving stolen property,[2] and one misdemeanor count of failure to appear in court when required, in violation of the Bail Reform Act.[3] On appeal he contends that the sentencing court (1) impermissibly took into account his national origin[4] and his status as an illegal alien in imposing sentence, and (2) exceeded its authority by telling the prosecutor to take all necessary steps to effect appellant's deportation after he had served his sentence. We affirm.

## I

On August 9, 1991, Mr. Yemson was arrested when he tried to get a $2,500 cash advance on a credit card which he had fraudulently obtained from a bank by using a false name. After being charged with forgery and released on a $15,000 bond, he fled the country. When he failed to appear at his scheduled preliminary hearing, the court issued a bench warrant for his arrest.

More than a year and a half later, on March 6, 1993, Mr. Yemson was detained by Immigration and Naturalization Service (INS) agents upon his arrival at Kennedy International Airport in New York. He waived extradition and was transported to the District of Columbia to face the charges against him. After being indicted on nine counts of credit card fraud and one count of attempted credit card fraud, in addition to receiving stolen property and

violating the Bail Reform Act, Yemson pleaded guilty to three charges as noted above. He was released on his personal recognizance and ordered to return for his sentencing hearing. Once again, however, he fled the country and did not appear in court for sentencing; consequently, another bench warrant was issued for his arrest.

Some time thereafter Mr. Yemson re-entered the United States, and in 1997 he was convicted in federal court in New York on new charges of forgery, telecommunications fraud, and illegal re-entry into the United States after deportation. He served an eighteen-month prison term in a federal penitentiary and was then returned to the District of Columbia for sentencing in the instant case.

On September 16, 1998, the court sentenced Mr. Yemson to consecutive prison terms of three to nine years for credit card fraud, one year for receiving stolen property, and one year for violating the Bail Reform Act. Each of these sentences was within the statutory limit for the offense charged. In addition, he was ordered to pay $40 to the Crime Victims Compensation Fund.

During the sentencing hearing, the judge asked counsel to advise her of the current status of the case, the exact charges to which Mr. Yemson had pleaded guilty, and the possible sentences available for those offenses. In the course of the ensuing discussion, the judge learned that Mr. Yemson had twice fled the country while charges were pending against him, that he had been deported on other occasions, and that he had been convicted of illegal re-entry after deportation. Mr. Yemson now asserts that the judge's questions and comments[5] impermissibly inject-

---

1. D.C.Code § 22–3823 (1996).

2. D.C.Code § 22–3832(c)(2) (1996).

3. D.C.Code § 23–1327 (1996).

4. Appellant is a native of Nigeria.

5. At various points in the hearing, the judge said:

Let me ask a question. Why is he here? He's from Nigeria; he's been, according to the presentence report, deported at least twice. Why is he in this country?

\* \* \* \* \*

As I understand the process, the U.S. Attorney's Office is supposed to contact the Justice

ed his ethnicity and his status as an illegal alien into the sentencing proceedings and resulted in a sentence harsher than the judge might otherwise have imposed.

## II

■ Because even an illegal alien has a right to due process, a court imposing sentence in a criminal case may not treat the defendant more harshly than any other defendant "solely because of [his] nationality or alien status. That obviously would be unconstitutional." *United States v. Gomez*, 797 F.2d 417, 419 (7th Cir.1986). This does not mean, however, that a sentencing court, in deciding what sentence to impose, must close its eyes to the defendant's status as an illegal alien and his history of violating the law, including any law related to immigration. Indeed, "[t]he sentencing court ... must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563–564, 104 S.Ct. 3217, 82 L.Ed.2d 424 (1984) (citing *Williams v. People of State of New York*, 337 U.S. 241, 247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949)). This discretion includes the right to consider information concerning other illegal acts in which the defendant has been involved if that information may reasonably bear on the sentencing decision. *See Wasman*, 468 U.S. at 569–570, 104 S.Ct. 3217. So long as the sentence imposed is within statutory limits, as the sentences in this case are, we will not disturb it unless it has a "fundamental defect." *Johnson v. United States*, 628 A.2d 1009, 1015 (D.C.1993); *accord, e.g., Foster v. United States*, 290 A.2d 176, 179 (D.C.1972). We find no such defect here.

■ In order to prevail on this appeal, Mr. Yemson must show that the sentencing court's comments about his national origin and his status as an illegal alien bore no reasonable relationship to his established pattern of misconduct and that those comments formed the actual basis for the imposition of an enhanced sentence. Our review "begins and ends with a review of the record." *United States v. Borrero–Isaza*, 887 F.2d 1349, 1353 (9th Cir.1989). Furthermore, because Mr. Yemson makes this assertion for the first time on appeal, having said nothing at all about it in the trial court, we review his claim solely for plain error. *E.g., Brawner v. United States*, 745 A.2d 354, 357 (D.C. 2000); *see Watts v. United States*, 362 A.2d 706, 709 (D.C.1976) (en banc) (defining plain error). We find no plain error; indeed, we find no error at all.

The court stated three reasons for the sentence it imposed upon Mr. Yemson: (1) his failure to appear for sentencing five years earlier, (2) his lengthy record for "many of the same charges," and (3) his failure to accept responsibility for his actions. After noting that Yemson "didn't show up for sentencing and has been missing since 1993 ... [and] we are nearing the end of 1998 and that's not accepting responsibility," and that "there are consequences for this behavior," the court imposed consecutive sentences totaling three to eleven years (the maximum would have been three to twelve years). In his brief Yemson cites several cases in which sentences have been set aside because, in each case, the sentencing court expressed a clear intent to punish the defendant because of his or her status as an alien.[6] We have no quarrel with those cases, but we

---

Department and bring to their attention that he's here and needs to be deported.

\* \* \* \* \*

... [N]ow that he's here, I will have to sentence him, and he'll have to serve his time. But he should never be released. He should be deported ... following whatever time he owes for these crimes he's committed in this country. That's how I think the process is supposed to work.

6. *E.g., United States v. Leung*, 40 F.3d 577, 585 (2d Cir.1994); *United States v. Onwuemene*, 933 F.2d 650, 651 (8th Cir.1991); *United States v. Borrero–Isaza, supra*, 887 F.2d at 1355; *United States v. Edwardo–Franco*, 885 F.2d 1002, 1005 (2d Cir.1989).

deem them inapposite here. The record in this case clearly reflects that the court imposed a heavy sentence not because of Mr. Yemson's ethnicity or alien status but because of his unlawful conduct, especially his conduct in the five and a half years since he entered his guilty pleas, his flight from justice, and his refusal to accept responsibility for his actions. Indeed, at one point in the proceedings, it was defense counsel who asked the court to consider Yemson's immigration status as a factor in support of a lenient sentence. Counsel asked the court "not to make him a burden on American taxpayers ... he is not going to stay here anyway." The fact that the court did not accede to this suggestion is further evidence that the court did not consider Mr. Yemson's status as a factor relevant to its sentencing decision. We conclude that Mr. Yemson has failed to show that his nationality and his immigration status served as the basis for the sentence he received.

■ Nor do we find any error in the court's telling the prosecutor "to contact the Justice Department and bring to their attention that he's here and needs to be deported," or in the notation on the judgment, "AUSA [Assistant United States Attorney] to take whatever steps necessary to deport defendant once sentence is served." In the first place, the court was simply reminding the prosecutor of an obligation that he already knew about. It was not, as Yemson now asserts, an "order" from the court to assure his deportation, and it plainly was not part of the sentence. Moreover, although the record is not entirely clear on this point, it appears that the INS had already lodged a detainer against Mr. Yemson before he was sentenced; at least, that is what Yemson's attorney said his client had told him. After Mr. Yemson has served his sentence, he will still have an opportunity under established procedures to contest his deportation, assuming he has not waived his right to do so.

For the foregoing reasons, the judgment of the Superior Court is in all respects *Affirmed.*