[Cite as *State v. Byrd*, 2012-Ohio-4616.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

STATE OF OHIO                                          :

    Plaintiff-Appellee                        :               C.A. CASE NO.     24964

v.                                                              :               T.C. NO.     08CR3074

DEREK W. BYRD                                       :                  (Criminal appeal from
                                                       Common Pleas Court)

    Defendant-Appellant                    :

                                                                              :

                  . . . . . . . . . .

# **O P I N I O N**

Rendered on the _____5th_____ day of _____October_____, 2012.

. . . . . . . . . .

R. LYNN NOTHSTINE, Atty. Reg. No. 0061560, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

MARK A. DETERS, Atty. Reg. No. 0085094, 1800 Lyons Road, Dayton, Ohio 45458
        Attorney for Defendant-Appellant

. . . . . . . . . .

DONOVAN, J.

{¶ 1}     Defendant-appellant Derek W. Byrd appeals his conviction and sentence for

one count of involuntary manslaughter, in violation of R.C. 2903.04(B) and 2903.13(A), a

felony of the third degree.   Byrd filed a timely notice of appeal with this Court on December 27, 2011.

{¶ 2}    We set forth the history of the case in *State v. Byrd*, 2d Dist. Montgomery No. 23950, 2011-Ohio-2060 (hereinafter "*Byrd I*"), and repeat it herein in pertinent part:

> On July 17, 2008, in Dayton, Byrd punched a man so hard that the man fell down, hitting his head on the concrete on which he was standing. Two days later, the man died from his injuries.
>
> On January 8, 2010, Byrd entered a negotiated plea of guilty to involuntary manslaughter, R.C. 2903.04(B) and 2903.13(A), a third-degree felony.   Byrd agreed to serve from 1 to 5 years in prison and agreed not to apply for judicial release until he had served at least one year in prison. In exchange, the state agreed not to recommend a prison term, leaving the length of Byrd's prison sentence entirely within the trial court's discretion, and agreed not to object to his application for judicial release.
>
> On February 23, 2010, the trial court sentenced Byrd to a 5-year prison term.   Under the version of the judicial-release statute that was in effect at the time of sentencing, coupled with Byrd's sentencing agreement that he would not file for judicial release before one year, had the court imposed a prison term of 1, 2, 3, or 4 years, Byrd could have applied for judicial release after one year.   But the specific wording of the statute for a 5-year term would mean that Byrd would not be eligible for judicial release at all because he would not be eligible to file until he served all five years.   On

February 24, 2010, the day after he was sentenced, Byrd filed a motion to withdraw his guilty plea. Byrd argued that he did not enter his guilty plea knowingly, intelligently, and voluntarily because the trial court had mislead him into believing that he would be eligible to apply for judicial release after one year, regardless of the prison term it imposed. On February 25, 2010, the court entered a judgment of conviction without ruling on Byrd's motion to withdraw. On March 11, 2010, Byrd supplemented his motion to withdraw.

{¶ 3} On March 23, 2010, Byrd appealed his conviction and sentence. We reversed, holding that the trial court erred by failing to hold a hearing on Byrd's motion to withdraw his guilty plea. *Byrd I*, 2011-Ohio-2060. While Byrd's case was on remand, the trial court permitted him to withdraw his guilty plea, and the matter was set for trial on January 9, 2012. Significantly, on September 30, 2011, HB 86 became effective. As a result, the maximum sentence for involuntary manslaughter was reduced from five years to three years.

{¶ 4} On November 21, 2011, Byrd appeared before the trial court and pled guilty to one count of involuntary manslaughter. At that point, Byrd had served almost two years in prison. Thus, Byrd faced an additional year in prison if the trial court decided to sentence him to the maximum penalty of three years. We note that Byrd entered his guilty plea without the benefit of an agreed prison term.

{¶ 5} The trial court subsequently sentenced Byrd to the maximum of three years in prison. The trial court also imposed a fine on Byrd of $5,000.00. On November 22, 2011, Byrd filed a motion to reconsider that portion of the sentence whereby he was ordered

to pay the $5,000.00 fine. The trial court did not issue a decision regarding Byrd's motion to reconsider before he filed a notice of appeal with this Court.

{¶ 6} It is from this judgment that Byrd now appeals.

{¶ 7} Byrd's sole assignment of error is as follows:

{¶ 8} "APPELLANT'S SENTENCE WAS IN VIOLATION OF DUE PROCESS OF LAW AND WAS AN ABUSE OF DISCRETION."

{¶ 9} In his sole assignment, Byrd contends that the trial court violated his rights to due process and a fair trial by imposing a harsher sentence without an explanation of its reasons for doing so, after he had successfully appealed his sentence to this Court, in violation of the rule of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

{¶ 10} As we held in *State v. Nelloms*, 144 Ohio App.3d 1, 4, 759 N.E.2d 416 (2d Dist.2001):

> The Supreme Court has held that a trial court violates the Due Process Clause of the Fourteenth Amendment when it re-sentences a defendant to a harsher sentence, motivated by vindictive retaliation. *North Carolina v. Pearce* (1969), 395 U.S. 711, 724, 89 S.Ct. 2072, 2080. Further, a presumption of vindictiveness arises when the same judge re-sentences a defendant to a harsher sentence following a successful appeal. *Id*. at 726, 89 S.Ct. at 2081. In order to overcome the presumption, the trial court must make affirmative findings on the record regarding conduct or events that occurred or were discovered after the original sentencing. *Id*.; *Wasman v.*

*United States* (1984), 468 U.S. 559, 104 S.Ct. 3217. This means that a trial court may impose an enhanced sentence, but it must demonstrate that it was not motivated by vindictiveness toward the defendant for exercising his rights. *Pearce*, 395 U.S. at 723, 89 S.Ct. at 2079.

{¶ 11} *Pearce* requires that the trial court make findings based upon objective information concerning identifiable conduct on the part of the defendant. 395 U.S. at 726, 89 S.Ct. 2072. "Relevant conduct or events" sufficient to overcome the presumption of vindictiveness are those that throw "new light upon the defendant's 'life, health, habits, conduct, and mental and moral propensities.'" *Wasman v. United States*, 468 U.S. 559, 570-71, 104 S.Ct. 3217, 82 L.Ed. 2d 424 (1984); quoting *Williams v. New York*, 337 U.S. 241, 245, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Thus, a court imposing an enhanced sentence on remand must "detail the reasons for an increased sentence or charge" so that appellate courts may "ensure that a non-vindictive rationale supports the increase." *Id*. at 572, 104 S.Ct. 3217.

{¶ 12} Initially, we note that the State argues that because Byrd was ordered to serve a shorter prison sentence of three years after his second guilty plea, his sentence *cannot* be deemed harsher than the original sentence even with the added imposition of the $5,000.00 fine. Accordingly, the State suggests that there can be no claim of vindictive sentencing. The State's argument in this regard is not persuasive. Although the range of potential sentences had recently been lowered by the Ohio legislature, the trial court still imposed the maximum allowable sentence of three years upon Byrd for involuntary manslaughter. In addition to ordering Byrd to serve the maximum sentence, the trial court

also ordered him to pay a fine of $5,000.00. Byrd's original sentence required him to serve the maximum prison term, which at that time was five years. Upon re-sentencing, the trial court not only ordered him to serve the maximum prison term, but also imposed a substantial fine. In our view, this constitutes a "harsher" sentence for the purpose of determining whether the trial court acted in a vindictive manner upon re-sentencing Byrd.

{¶ 13} After Byrd pled guilty for a second time, the trial court made the following comments before it imposed sentence:

The Court: You know I can't act on – I can't claim that I know the hurt that the family feels, but what you did was cowardly. You sucker punched somebody who wasn't bother – you know, the thing that bothered me the most, and I sat through or looked at the information concerning the Motion to Suppress. You'd have gotten away with it if it hadn't been for some person walking down the street, seeing what you did and being shocked enough and calling the police.

And when it came back, you had the nerve after you've punched this guy and he's fallen and hit his head on the concrete, to be trying to tell the police that you don't know what happened and that you were just trying to help take care of him. You know, that to be [sic] is galling; it's cowardly.

*And, you know, I can't say to you what I would like to say to you if I were out on the street.*

You know what you did was wrong. It was wrong on all levels. Wrong. And I – you know, I'm not impressed with the fact that you got your

life together. I'm not impressed with the fact that you hadn't had any criminal behavior until this time. You killed a man. Being stupid or whatever, or intentional or whatever, you put in motion some actions which led to the death of another man.

*** 

You know. And, you know, the fact that you've decided to make something of your life as a result of that, that's all well and good, but it's not going to bring him back. And, you know, you're going to have to spend the rest of your life trying to do well to maybe convince that family that your life is worth something.

*And quite frankly, I'm annoyed with the grand jury because if I had been in the prosecutor's office at that time I would have gone for a felony homicide, involuntary manslaughter. Because I think from the actions that I heard on the bench, what you did was despicable. That's the best word I can say. Despicable.*

**{¶ 14}** It clear that the trial court offered no new rationale for its decision to impose a harsher sentence; i.e. a $5,000.00 fine. In fact, the trial court did not make any affirmative findings on the record that would support the imposition of a $5,000.00 fine. Preliminarily, we caution the trial court that the following two statements are not appropriate judicial discourse:

*And, you know, I can't say to you what I would like to say to you if I were out on the street.*

*** 

*And quite frankly, I'm annoyed with the grand jury because if I had been in the prosecutor's office at that time I would have gone for a felony homicide, involuntary manslaughter.*

{¶ 15}  We note that the only new/additional information provided to the trial court consisted of defense counsel's argument that Byrd had been a model inmate since being incarcerated and did not have any infractions while in prison.   Defense counsel also pointed out that Byrd had accepted responsibility and was extremely remorseful for his conduct.

{¶ 16}  We further note that the record establishes that Byrd's pre-sentence investigation report (PSI) had not been updated since his first sentencing in February of 2010.  Thus, the trial court possessed no new information that Byrd's status as an indigent had changed, which would warrant the $5,000.00 fine.  Simply put, there was no evidence in the record that Byrd had a future ability to pay the fine the trial court decided to impose. Nevertheless, the trial court found that Byrd would get credit for time served and "he will have the apparent present ability to get a job with the re-entry program that we have." Significantly, we note that there is no evidence in this record of the existence of any re-entry programs available to Byrd once he is released from prison.

{¶ 17}  Upon review, the court's failure to provide reasons for enhancing Byrd's sentence fails to overcome the *Pearce* presumption of vindictiveness.   Thus, the presumption of vindictiveness arises, and is not overcome by any trial court findings affirmatively appearing on the record.  Most importantly, there is no evidence in the record which demonstrates that Byrd has the future ability to pay the $5,000.00 fine.  Since the

record is devoid of any justifiable reasons to rebut the *Pearce* presumption, Byrd's first assignment of error is sustained. On the authority contained in Section 3(B)(2), Article IV of the Ohio Constitution and R.C. § 2953.08(G)(2)(b), we vacate the $5,000.00 fine imposed by the trial court.

. . . . . . . . . .

FAIN, J., concurs.

GRADY, P.J., concurring:

{¶ 18} A sentence is "harsher" for purposes of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), when the sentence burdens a right protected by law that was not similarly burdened by the prior sentence the court imposed. In addition to the rights associated with personal liberty, the Ohio Constitution, Article I, Section 1, identifies as "unalienable rights" the rights of "acquiring, possessing, and protecting property." The $5,000.00 fine the court imposed on Defendant pursuant to R.C. 2929.18(A)(3)(d) burdened the property rights that Article I, Section 1 protects. Because Defendant's property rights were not similarly burdened by the prior sentence the court had imposed, the $5,000.00 fine imposes a harsher sentence for purposes of *Pearce*. Further, as the majority opinion points out, no new factors or circumstances were before the court to support the fine not previously imposed. The trial court therefore erred when it imposed the fine as part of Defendant's sentence.

. . . . . . . . . .

Copies mailed to:

R. Lynn Nothstine
Mark A. Deters

Hon. Frances E. McGee