IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 13, 2000

## STATE OF TENNESSEE v. CLARENCE DAVIS

**Appeal from the Criminal Court for Davidson County**
**No. 97-C-1933     Cheryl Blackburn, Judge**

---

**No. M2000-00480-CCA-R3-CD - Filed May 1, 2001**

---

The Defendant, Clarence Davis, was convicted by a jury of premeditated first degree murder and sentenced to a term of life imprisonment. On direct appeal, this Court reduced the Defendant's conviction to second degree murder and remanded the case for re-sentencing. State v. Clarence Davis, No. 01C01-9811-CR-00451, 1999 WL 737873, at *1, Davidson County (Tenn. Crim. App., Nashville, September 22, 1999). After a sentencing hearing, the Defendant was sentenced to the maximum term of twenty-five years. The trial court further ordered the Defendant to serve this sentence consecutively to a previously imposed sentence in a case wherein Defendant's sentence to community corrections had been revoked. The Defendant now appeals contending: 1) the trial court erred in imposing the maximum sentence for second degree murder and 2) the trial court erred in ordering his sentence to run consecutively to a previously imposed sentence in an unrelated case. After a review of the record and applicable law, we affirm the length of the sentence and the order of consecutive sentencing, but remand for a determination of the amount of pretrial jail credit to which the Defendant is entitled.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed;**
**Case Remanded for a Determination of Pretrial Jail Credit**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

Karl Dean, District Public Defender; Jeffrey A. DeVasher, Assistant Public Defender (on appeal); Ralph W. Newman, Assistant Public Defender (at trial), for the appellant, Clarence Davis

Paul G. Summers, Attorney General and Reporter; Marvin E. Clements, Jr., Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Grady Moore, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

In 1997, a Davidson County jury convicted the Defendant of premeditated first degree murder. Based upon the jury's verdict, Defendant was sentenced to life imprisonment. In Defendant's first appeal, he challenged the sufficiency of the evidence supporting his first degree murder conviction. Defendant specifically argued that premeditation had not been proven beyond a reasonable doubt. In the direct appeal of Defendant's conviction, this court summarized the facts as follows:

In May of 1997, the appellant and his wife lived with the appellant's mother-in-law, Corrine Bell, in Nashville. The backyard of the Bell residence joined the backyard of Benjamin Kirk. No fences or other barriers separated the yards. On Memorial Day afternoon, May 26, the appellant and Ben Kirk visited with one another while relaxing in their backyards. During a portion of the afternoon, the appellant was preparing to grill for members of his wife's family that were arriving at the Bell residence. After 5 p.m., the appellant and Kirk were joined by Kirk's friend James Bass. Both Bass and Kirk were professors at Tennessee State University.

Over the next "two and a half to three hour period of time" the appellant traveled "back and forth" between his yard and Kirk's yard. During this period, Kirk, Bass, and the appellant routinely engaged in conversation and the drinking of Kirk's Crown Royal whiskey. The appellant's nieces who had arrived earlier for the barbeque ventured into Kirk's backyard to play with the appellant's Rottweiler dog that was running loose in Kirk's yard. One of the nieces, approximately four years old, approached the three men at the table. Kirk placed the child on his knee while preparing her a hotdog. Bass observed nothing inappropriate about Kirk's behavior with the child.

Thereafter, Kirk invited his wife to join the men outside. Kirk and the appellant continued to drink Crown Royal. Abruptly, the appellant stood and began dancing to the music with a gun in his hand "swinging it from side to side" After a few minutes, the appellant stopped dancing and placed the gun inside the waistband of his pants. Bass testified that he witnessed no argument or hostility between Kirk and the appellant. Feeling uncomfortable, however, in his present surroundings, Bass left the Kirk's [sic] residence around 8:40 p.m.

Brenda Kirk, the wife of the victim, testified that she remained inside for the majority of the time the three men were outside. However, that evening, Mrs. Kirk observed the appellant dancing in front of Mr. Bass but she did not notice a gun in the appellant's hand. Finding his behavior odd, she returned indoors and went to bed around 9 p.m. Sometime after 11 p.m., her neighbor, Ms. Bell, telephoned to inform her that something had happened to her husband. Mrs. Kirk, having awakened her daughter, ran downstairs and found her husband lying on the patio. Soon thereafter,

the paramedics and the police arrived to find the victim deceased.

Detective Clifford Mann with Metro Police arrived at the crime scene between 11:30 p.m. and midnight. He assisted with the interviews of Ms. Bell and Mrs. Kirk. The crime scene revealed three spent .380 shell casings. No one witnessed the shooting, nor was any weapon ever discovered. After the shooting, the appellant unchained his dog, told his wife and mother-in-law what he had done, and walked six miles into downtown Nashville. Several days later, on June 3, 1997, the appellant was taken into custody. Following the appellant's waiver of his constitutional rights, he provided the police with a detailed statement admitting his shooting of the victim. The appellant's recorded statement, which was a crucial part of the State's proof, was introduced into evidence at trial. Excerpts of the statement relevant to the issue of premeditation are as follows:

[Kirk] had been knowing me for eight years and it ain't like I'm no perfect stranger to him . . . [W]e were best buddies.

. . .

So we was over there . . . and then he grabbed my little nieces, you know, he was cuddling them, you know, and I was sitting there watching him and then Coach Bass was just smiling at him as he was fondling them . . . And then I told them to go on back over there on their side of the yard and do what they gonna do, you know, play on over there . . . Kirk persuaded me and the Coach and kids to come on back over there again. . . . And he sat (name inaudible) on his knee first and then he started fondling her . . . I sent them on back over there and we just kept on listening to music and drinking and things. Then . . . everybody left . . . and me and him [Kirk] and Coach Bass was just sitting there and I got to talking to Kirk about, you know, what he had been doing. . . . Coach Bass . . . [left] at that particular time.

. . .

I figured I was there you know and it was my responsibility . . . to do something about it. . . . I didn't have no intention of doing nothing physically to him, I just wanted . . . [to] communicate with him. Let him know how I feel so he can correct himself.

. . .

He got up--he stand up and I stand up--you know . . . we got in an heated argument. He told me, what you talking about nigger. So he stood up and I stood up you know and then that's when Bass walked toward the door talking to his [Kirk's] wife.... He pushed me cause I'm trying to relate to him you know and he get hostile with me you

3

know . . . I was trying to communicate with him. You know--I was trying to tell him what he was doing--trying to make him see what he was doing.

. . .

I keep my weapon on me. . . .

Q: (Detective) And you had it on your side--while you was barbequing--when he asked you to come over there?

A: (Defendant) Yes, . . . I had come from the other side of town--on fortieth--and I just you know had it and hadn't put it away.

. . .

Q: (Detective) Now Clarence, why didn't you, when you saw it was getting out of hand, and he had done something to offend you, why didn't you leave and go to your house and call the police and report him?

A: (Defendant) I don't know. I just wasn't thinking.

Dr. Bruce Levy, the medical examiner for Davidson County, testified that the victim exhibited two gunshot wounds, one to the right side of his face fracturing the bones of the skull and the other to his abdomen piercing his aorta, intestines, and backbone. The doctor testified that both wounds were potentially fatal. He stated that the gunshot wound to the abdomen was fired in contact range, i.e., where the gun is in actual contact with the body when fired. The doctor determined the cause of death to be hemorrhaging from the gunshot wound to the abdomen. The toxicology report revealed that the victim's blood/alcohol content was .13 grams. From this report, the doctor opined that the victim had consumed about a dozen "one-and-a-half ounce" shots of whiskey.

State v. Clarence Davis, 1999 WL 737873, at *1.

On appeal, this Court determined that while the evidence was insufficient to support a conviction for premeditated first degree murder, the evidence was sufficient to support a conviction of second degree murder. As a result, the case was remanded to the trial court for re-sentencing.

The proof at the sentencing hearing consisted of the original trial record, the pre-sentence report, two community corrections violation warrants, and the indictments which led to the Defendant's convictions for assault and aggravated assault and his placement in community corrections. Based upon the evidence at the hearing and the facts presented at trial, the trial court sentenced the Defendant, as a 100 % violent offender, to twenty-five (25) years for second degree

murder. The second degree murder sentence was ordered to be served consecutively to Defendant's prior sentences for the assault and aggravated assault convictions. The Defendant had been sentenced to concurrent terms for an effective sentence of four years on the aggravated assault and assault convictions.

## ANALYSIS

The Defendant contends that the trial court erred in imposing the maximum sentence, because the trial court misapplied one statutory enhancement factor and failed to apply one statutory mitigating factor. The Defendant also argues that the trial court erred in ordering him to serve the sentence for second degree murder consecutively to a previous sentence.

When a defendant challenges the length, range or manner of service of a sentence, the reviewing court must conduct a de novo review on the record with a presumption that the determinations made by the trial court were correct. Tenn. Code Ann. § 40-35-401(d). We condition the presumption of correctness "upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). "[T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence." State v. Jones, 883 S.W.2d 597, 599-600 (Tenn. 1994). The burden of showing that a sentence is improper is on the appealing party. Tenn. Code Ann. § 40-35-401(d) (sentencing commission comments). In reviewing the record, this court must consider (a) the evidence at the trial and the sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel, (e) the nature and characteristics of the offenses, and (f) the appellant's potential for rehabilitation. See Tenn. Code Ann. § 40-35-210; see also Tenn. Code Ann. § 40-35-102 & 103.

The sentence range for a Range I offender convicted of a Class A felony is between fifteen and twenty-five years. Tenn. Code Ann. § 40-35-112(a)(1) (1997). Tennessee Code Annotated section 40-35-210(c) (1997) sets the presumptive sentence for a Class A felony at the midpoint of the range (here 20 years), if there are no enhancement or mitigating factors. Where one or more enhancement factors apply but no mitigating factors exist, the trial court may sentence above the presumptive sentence but still within the range. Id. § 40-35-210(d). Where both enhancement and mitigating factors apply to a Class A felony, the trial court must start at the midpoint of the range, enhance the sentence within the range as appropriate to the enhancement factors, and then reduce the sentence within the range as appropriate to the mitigating factors. Id. § 40-35-210(e). The weight afforded an enhancement or mitigating factor is left to the discretion of the trial court so long as the trial court complies with the purposes and principles of the Tennessee Criminal Sentencing Reform Act of 1989 and its findings are supported by the record. State v. Hayes, 899 S.W.2d 175, 185 (Tenn. Crim. App. 1995).

The trial court found the following five statutory enhancing factors applicable to the

5

Defendant's conviction:

(1) The defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range;

(8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community;

(9) The defendant possessed or employed a firearm, explosive device or other deadly weapon during the commission of the offense;

(11) The felony resulted in death or bodily injury or involved the threat of death or bodily injury to another person and the defendant has previously been convicted of a felony that resulted in death or bodily injury; and

(13)(E) The felony was committed while on any of the following forms of release if such release is from a prior felony: [a]ny other type of release status into the community under the direct or indirect supervision of the department of correction or local government authority.

Tenn. Code Ann. § 40-35-114 (1997). Additionally, the trial court found that there were no mitigating factors applicable to the Defendant's case. On appeal, Defendant challenges the trial court's application of enhancing factor (8), as well as the trial court's rejection of mitigating factor (11) in Tenn. Code Ann. § 40-35-113.

First, the Defendant asserts that the trial court improperly relied upon statutory enhancement factor (8), that Defendant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community." Tenn. Code Ann. § 40-35-114(8) (1997). We conclude that the record supports the application of factor (8). The record reflects that violation warrants were sworn out against the Defendant for violations of the conditions of his community corrections sentence imposed for the assault and aggravated assault convictions. The first warrant was on August 17, 1995, for the following violations:

1)     Testing positive for alcohol on August 10, 1995.
2)     Failing to secure and maintain full-time employment
3)     Failing to make full and truthful reports to his case officer and lying to Supervision Coordinator about an appointment with his case officer
4)     Failing to attend an appointment with his case officer on August 8, 1995, and failing to reschedule.

A second warrant was sworn against the Defendant on December 8, 1995 for testing positive to cocaine on November 29, 1995. Thus, although the violation warrants were not disposed of until after Defendant was arrested for first degree murder, it is apparent that his community corrections was revoked because of the above violations, and not because of the murder charges in the present

case.   The trial court appropriately applied enhancement factor (8) to Defendant's case.

Next, the defendant asserts that the trial court should have lowered his sentence based upon Tenn. Code Ann. § 40-35-113(11), which provides for mitigation where "the defendant, although guilty of a crime, committed the offense under such unusual circumstances that it is unlikely that a sustained intent to violate the law motivated the defendant's conduct."   Initially, we note that the "intent" element in mitigating factor (11) specifically addresses the defendant's intent which motivated the conduct leading to the offense for which the defendant is being sentenced. Moreover, we find that the Defendant has failed to present any evidence of "unusual circumstances," which would warrant application of this mitigating factor.

The record shows that the Defendant exhibited an intent to engage in a potentially hostile confrontation with the victim concerning the victim's alleged fondling of Defendant's niece.  The Defendant was armed and had been brandishing his weapon.  Following the shooting, Defendant left the scene, and was apprehended eight days later.  More importantly, the medical examiner testified that the Defendant shot the victim twice.  One shot was to the right side of the victim's face and was potentially fatal.  A second shot was to the victim's abdomen, with the gun actually touching the victim's abdomen, and it proved to be fatal.  The trial court found that these facts were sufficient to reject the application of factor (11).  The Defendant has failed to overcome the presumption of correctness afforded the trial court's findings of fact, and was not entitled to any mitigation of his sentence based on this factor.

Finally, the Defendant argues that the trial court erred in ordering that the sentence in this case be served consecutively to a sentence in an unrelated case.  We disagree.

The Defendant asserts that he received a more severe sentence when he was resentenced, since the trial court specifically declined to order consecutive sentences after his original trial.   In support of his argument, the Defendant relies on North Carolina v. Pearce, 395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969).   In Pearce, the United States Supreme Court held that a harsher sentence after a new trial raises a presumption of "judicial vindictiveness," which may be overcome by an affirmative showing on the record of the reasons for the harsher sentence. 395 U.S. at 725-26, 89 S. Ct. at 2080-81.  In subsequent cases, the Court clarified that the presumption of vindictiveness announced in Pearce, "does not apply in every case where a convicted defendant receives a higher sentence on retrial."  See Alabama v. Smith, 490 U.S. 794, 797, 109 S. Ct. 2201, 2204, 104 L. Ed. 2d 865 (1989)(quoting Texas v. McCullough, 475 U.S. 134, 138, 106 S. Ct. 976, 979, 89 L. Ed. 2d 104 (1986).  The Supreme Court limited the application of Pearce to circumstances, "in which there is a 'reasonable likelihood' that the increase is the product of actual vindictiveness on the part of the sentencing authority.  Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness."  Alabama v. Smith, 490 U.S. at 801, 109 S. Ct. at 2205 (citing  Wasman v. United States, 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984)).

The Defendant also relies upon State v. James M. Coggins, No. 01C01-9503-CR-00076, 1995 WL 649954, at *1, Davidson County (Tenn. Crim. App., Nashville, Nov. 2, 1995) for support.

The defendant in <u>Coggins</u> was originally sentenced to "20 years as a range one offender for count one; to 20 years as a range one offender for count three; to 35 years as a range two offender for count four; and to 50 years as a range three offender for count five." <u>Id.</u> In his original sentence, Coggins' sentence for count three was a concurrent sentence to count one, while his sentences for counts four and five were to run consecutively. Coggins received an effective sentence of 105 years and appealed his case to this Court. <u>See</u> <u>State v. Coggins</u>, C.C.A. No. 01C01-9310-CR-00360 (Tenn. Crim. App., at Nashville, July 28, 1994).

In Coggins' first appeal, this Court modified the attempted first degree murder convictions to convictions for attempted second degree murder. This Court further held that the trial court should have sentenced Coggins as a Range I offender, but upheld the consecutive sentences imposed upon the defendant in counts four and five. 1995 WL 649954 at *1. The case was remanded for resentencing. At the resentencing hearing, the trial court considered no additional evidence beyond that previously considered. <u>Id.</u> Coggins was sentenced to 20 years for count one and to nine years each for counts three, four and five. Additionally, Coggins was ordered to serve all of his sentences consecutively. The effective sentence ordered at the resentencing hearing was 47 years. <u>Id.</u> Again, Coggins appealed his sentencing to this Court, and we held that the failure of the trial court to disclose, on the record, its reasons for increasing the defendant's punishment from concurrent to consecutive sentencing, did not overcome the presumption of vindictiveness discussed in <u>Pearce</u>. <u>Id.</u> at * 2. Thus, we concluded that the additional consecutive sentencing imposed at Coggins' re-sentencing hearing was improper.

We find that the case <u>sub judice</u> is distinguishable from <u>Coggins</u> and is not controlled by the holding in <u>Pearce</u>. Rather, we find that Rule 32(c)(2) of the Tennessee Rules of Criminal Procedure and the holding of <u>State v. Leach</u>, 914 S.W.2d 104 (Tenn. Crim. App. 1995) control the outcome of this case. Rule 32(c)(2) states as follows:

> **Sentence When Defendant Has Prior Sentence Not Fully Served**.--If the defendant has additional sentences not yet fully served as the result of convictions in the same court or in other courts of this state and if this fact is made known to the court prior to sentencing, the court shall recite this in the judgment setting sentence, and the sentence imposed shall be deemed to be concurrent with the prior sentence or sentences, unless it affirmatively appears that the new sentence being imposed is to be served consecutively with the prior sentence or sentences. The judgment to make the sentences consecutive or concurrent shall explicitly recite the judge's reasons therefor, and is reviewable on appeal. *Should prior unserved in-state sentences not be called to the attention of the trial judge by or on behalf of the defendant at the time of sentencing, and set out in the judgment setting the new sentence, the new sentence shall be deemed to be consecutive to any such undisclosed prior unserved sentence or sentences*; and this rule shall also apply when the defendant is convicted of a misdemeanor while on parole from a prior sentence, and the parole is subsequently revoked. If the defendant has additional sentences or portions thereof to serve, as the result of conviction in other states or in federal court,

the sentence imposed shall be consecutive thereto unless the court shall determine in the exercise of its discretion that good cause exists to run the sentences concurrently and explicitly so orders. (emphasis added)

In Leach, proceedings were initiated against the defendant for the revocation of probation ordered in two unrelated cases. At the defendant's probation revocation hearing, the trial judge found that the defendant had violated the terms of the probation he was ordered to serve in two unrelated convictions from September 1992 and April 1993. The trial judge determined that, when the defendant was given his April 1993 sentence, the defendant had failed to disclose to the trial judge his prior September 1992 sentence. The trial judge, at the probation revocation hearing, found that the defendant's April 1993 sentence was statutorily deemed to be consecutive to his unserved September 1992 sentence, due to the defendant's failure to disclose this unserved sentence. See Tenn. R. Crim. P. 32(c)(2). On appeal, this Court further observed that the record and the judgment setting the defendant's April 1993 sentence also failed to mention the defendant's September 1992 unserved sentence. Therefore, we affirmed the trial court's order of consecutive sentencing, pursuant to Rule 32(c)(2).

Similarly, at the time Defendant Davis was sentenced to life imprisonment following his conviction for first degree murder, Defendant failed to disclose his prior unserved sentence for assault and aggravated assault. The record reflects that, immediately upon receiving the jury's verdict of guilty of first degree murder, the trial court determined that the Defendant's automatic sentence was life imprisonment. The record also indicates that the previous judgment for first degree murder did not mention Defendant's unserved sentences for aggravated assault and assault. Under Rule 32(c)(2) and Leach, the Defendant's failure to disclose his prior unserved sentence made his sentence for first degree murder consecutive to his prior sentences for assault and aggravated assault. Thus, we find, contrary to the Defendant's argument, that his original sentence was a consecutive sentence by law, and that the presumption of vindictiveness in Pearce does not apply.

We also note that the trial court's grounds for ordering consecutive sentencing were proper. A trial court has the discretion to order consecutive sentencing if it finds that one or more of the required statutory criteria in Tenn. Code Ann. 40-35-115(b) exist. State v. Black, 924 S.W.2d 912, 917 (Tenn. Crim. App. 1995). The trial court found that the Defendant was an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2) (1997). The record supports the trial court's finding that the Defendant had an extensive criminal background. He was 40 years old when he committed the second degree murder in 1997. His first conviction was for kidnapping in 1977 in California at age 21, and he received a sentence of seven years. Apparently, while on parole in 1982, he received drug-related convictions in California. He was convicted of misdemeanor assault in Tennessee in 1990, and was placed on judicial diversion. In 1995, he was convicted in Tennessee for one count of aggravated assault and one count of misdemeanor assault. In a span of twenty years, the Defendant has received convictions for at least three felonies and four misdemeanors.

The trial court further found that the Defendant was a dangerous offender whose behavior

9

indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. Tenn. Code Ann. § 40-35-115(b)(4). However, when a trial court uses this factor, it must also decide whether consecutive sentences (1) reasonably relate to the severity of the offenses committed; (2) serve to protect the public from further criminal conduct by the offender; and (3) are congruent with general principles of sentencing. State v. Wilkerson, 905 S.W.2d 933, 939 (Tenn. 1995). The transcript of the re-sentencing hearing indicates that the trial court found that the facts of this case satisfied the elements in Wilkerson. The trial court did not err in ordering consecutive sentencing.

Finally, we note that, while the original judgment for first degree murder did not mention the Defendant's prior sentences, it did give the Defendant jail credit on the murder conviction extending from June 3, 1997 to September 15, 1998. However, the judgment for the second degree murder conviction did not reflect the amount of jail credit, if any, to which the Defendant is entitled. As we have discussed, pursuant to Rule 32(c)(2), Defendant's sentence for first degree murder had to be served consecutively to his sentence for aggravated assault and assault. The record on appeal indicates that while the Defendant was awaiting trial for the homicide, he was serving out the sentence for his assault and aggravated assault convictions, for which his community corrections had been revoked. At the re-sentencing hearing, the following colloquy occurred:

| General Moore: | Judge, if I could just clarify before I make any argument, my view of this is that there are two issues to be argued. One is the sentence to be received in this case, and secondly, whether that should be consecutive or concurrent to the case, Number 95-B-754, on which he was serving a Community corrections sentence at the time of his arrest. Am I correct in that? |
| --- | --- |
| The Court: | What is the status of that sentence? It looks like it was, [sic] probation was sustained, [sic] placed into effect on 6/6 of '97. It was a four-year sentence, and he had 355 days of jail credit. |
| Mr. Newman [Defense Counsel]: | Yes, Your Honor. Mr. Davis advises me he has served that sentence, so that is correct. |
| The Court: | Okay, so that has been flattened, [sic] served. |
| Mr. Newman: | Did they parole you, Mr. Davis, to your new sentence, or what happened? |
| Mr. Davis [Defendant]: | No, when [sic] I was doing the time, while they was [sic] holding me in custody. |
| Mr. Newman: | He has never been released from custody. |
| The Court: | I know that, but what I'm saying is you had to meet the Parole Board at some point; did you not? |
| Mr. Davis: | Yeah, they told me to bring it on to the Board, you know. They denied my parole based on the nature of my -- |
| The Court: | Okay. How long ago was that? |
| Mr. Davis: | About two years ago. |
| The Court: | Was that before you were convicted? |

| | |
|---|---|
| Mr. Davis: | Yes, ma'am. |
| The Court: | Okay, so they denied it. Do you have any idea when you flattened your sentence or have your flattened you sentence? |
| Mr. Davis: | November of last year. |
| The Court: | November of '99. |
| Mr. Davis: | Yes, ma'am. |
| The Court: | Okay. |

From the record, it is clear that the Defendant could not receive jail credit for the murder charge, if he was still serving his four-year sentence for assault and aggravated assault. This Court has held that Tennessee Code Annotated section 40-23-101(c) only provides for credit against a sentence if the reason for the incarceration arises from the offense for which the sentence was imposed. See Abernathy, 649 S.W.2d 285, 286 (Tenn. Crim. App. 1983); Trigg v. State, 523 S.W.2d 375, 376 (Tenn. Crim. App. 1975). Accordingly, a defendant cannot receive jail credit against a sentence, while he is serving out the terms of a previously imposed sentence. In the present case, the Defendant would not have been entitled to receive jail credit until after he had completely served his four-year sentence for assault and aggravated assault. We therefore, remand this case to the trial court for a determination of the amount of jail credit to which the Defendant is entitled.

## CONCLUSION

For the foregoing reasons, we affirm the twenty-five year sentence and the consecutive sentencing imposed by the trial court. The case is remanded to the trial court for the purpose of allowing it to determine the jail credit to which the Defendant is entitled.

_____
THOMAS T. WOODALL, JUDGE

11