NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1424
_____

AARON CARTER,
Appellant

v.

SUPERINTENDENT COAL TOWNSHIP SCI;
ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA;
THE DISTRICT ATTORNEY OF PHILADELPHIA


On Appeal from the United States District Court
for the Eastern District of Pennsylvania
District Court No. 2-15-cv-04896
District Judge: The Honorable Joel H. Slomsky

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 18, 2018

Before: SMITH, *Chief Judge*, GREENAWAY, JR., and KRAUSE,
*Circuit Judges*

(Filed: June 27, 2018)
_____

OPINION*
_____

SMITH, *Chief Judge.*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

When Aaron Carter was nineteen, he was charged with the murder of Rashaad Lowman. The evidence was damning. Lowman's eleven-year-old cousin, Yasin Lowman, witnessed the shooting, which involved multiple shots to Lowman's back, groin, and hand. Yasin was traumatized and required psychiatric treatment. In an effort to avoid further trauma to Yasin, the Commonwealth offered a plea deal in which Carter would receive a prison sentence of 15 to 30 years in exchange for a plea of guilty to third degree murder.

On December 1, 2008, when the parties appeared in the Philadelphia County Court of Common Pleas, Carter rejected the offer. The trial judge engaged in a dialogue with Carter to make sure that he understood the offer was a generous one and that it would enable him to get out of prison while he was still young. The trial judge reminded Carter that the circumstances of his case did not support self-defense. After further discussion, the trial judge again noted about the advantages of the plea offer. When Carter again rejected the offer, the judge told him he was "ill-advised" and "making a very, very bad decision." ARR15.

The following day, December 2, 2008, and before trial commenced, the prosecution extended a second plea offer of 12 ½ to 25 years. Carter also rejected this offer. After Carter's motion to suppress his confession to the police was denied, his jury trial got underway. The victim's grandmother and his young cousin Yasin Lowman testified, as did two police officers. Trial continued on December 3 with the expectation that autopsy and ballistic reports would be admitted into evidence, along with Carter's statement to the police. Before testimony began, defense counsel advised the court that Carter had asked if the plea was "still on the table." ARR19. The judge expressed a willingness to accept a

2

plea, but indicated that if Carter did plead, he would not be permitted to withdraw the plea. According to the judge, the "Commonwealth would be horrifically disadvantaged if he were to withdraw his plea. This 13-year-old, you can't say it would be anything other than unfair to put this child through another examination by lawyers." ARR20.

When defense counsel reviewed what an open plea meant, Carter balked, thinking he would get the 15 to 30 year offer originally extended. *Id.* Defense counsel informed the court of the development and asked for additional time. After conferring further with counsel, Carter agreed to an open plea to third degree murder and possession of an instrument of crime. The open plea was entered and accepted that day. At the end of the proceeding, Carter addressed the judge: "Your Honor, I'd like to thank you for giving me the opportunity to plead guilty and I know I had a chance to plead before, but I didn't. I was under—you know, I just didn't know at that time." ARR24.

At sentencing, the trial court heard argument from the Commonwealth, as well as testimony from the families of both the victim and Carter. When it was Carter's time to speak, he explained that he had known the victim since third grade and that they were friends. He expressed sorrow to the victim's family, and told his own family that he regretted putting them through an ordeal, concluding that "I'm sorry for everything and I really wish it never happened." ARR34.

The trial court acknowledged reading a letter Carter had written, and then addressed the victim's grandmother. The court discussed the nature of the crime, and especially the defensive nature of the victim's multiple wounds. **ARR35.** The judge agreed with Carter's mother that her son was smart, noting that his letter was one of the "most eloquent" she

3

had received. ARR35. But the judge was "candid with" Carter, telling him she thought "a lot of what you wrote to me is BS." *Id.* In the court's view, Carter was not "being honest" and that, although "sincerely remorseful," it was "because I think finally, finally you realized what you have done to your mother." *Id.* The judge explained that she was "struggl[ing] with what is fair and decent in this circumstance." *Id.* And she stated she had "no desire . . . no need to be vindictive." *Id.* The judge then discussed Carter's rejection of the Commonwealth's plea offer when he "knew [he was] guilty." *Id.* Continuing, the court stated that "the one thing I cannot get past is what you did to Yasin. You knew you were guilty. You had a cake offer, 15 to 30 for eight bullets in the back. I couldn't even believe the Commonwealth offered you that. And you didn't take the offer . . . until you knew the jury was going to hear your statement. That's when you were like, stop, wait, I can't beat this because the jury is going to hear this statement." ARR35-36.

After making these comments, the trial court turned back to Carter's letter and declared that it could not "ignore the manipulation and dishonesty." ARR36. First stating that she had been "fully prepared as of last night . . . [to] let him go take the 15," the trial judge explained she had changed her mind. *Id.* Carter's letter had given her pause "[b]ecause a large part of it was a snow job." *Id.* Explaining that everyone around Carter "still want[ed] to give [him] a shot," the judge sentenced him to 20 to 40 years of imprisonment. *Id.*

When Carter attempted to withdraw his plea, his motion was denied. His direct appeal was also unsuccessful. His action under Pennsylvania's Post-Conviction Relief Act fared no better. He filed a timely petition under 28 U.S.C. § 2254(d), which the District

4

Court denied. Carter sought and obtained a certificate of appealability from this court to address two claims: (1) that his trial counsel was ineffective because he failed to object when the trial judge participated in the plea bargaining process on December 1; and (2) that counsel was ineffective in failing to object to the trial court's vindictiveness at sentencing by imposing the maximum sentence to penalize him for exercising his right to trial.

To prevail on his ineffectiveness claims, Carter "must show that counsel's performance was deficient . . . [and] that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Moreover, because both of Carter's ineffectiveness claims were presented to and adjudicated by the state court, his § 2254 petition will be denied unless the state court decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

As to Carter's first claim of ineffectiveness, he contends that the trial court's initial participation in the plea bargaining process resulted in a coerced guilty plea. The record shows otherwise. An initial colloquy with Carter did not result in a guilty plea. When the Commonwealth extended an offer more favorable to Carter before trial commenced, he rejected that as well. It was only after trial was underway that Carter realized it was in his interest to plead guilty. He then entered an open plea following a thorough plea colloquy. The transcript of that proceeding reveals no basis for concluding that Carter's plea was either unknowing or involuntary.

On appeal, the Superior Court reasoned "there was no error in the trial court's *guidance* or involvement with the plea process." *Commonwealth v. Carter*, No. 3197 EDA 2013, at 8 (Pa. Super. Ct. Nov. 13, 2014) (emphasis added). The Superior Court's determination that the trial court's comments were "guidance" is a factual finding. While Carter argues that it is an unreasonable determination of the facts warranting habeas relief, we cannot agree. The record makes clear that the trial judge was trying to impress upon the nineteen-year-old Carter the favorable plea arrangement that was being offered and that it would allow him to be released from prison while he was in his late thirties, as opposed to serving a life sentence. Under § 2254(e)(1), findings of fact are "presumed to be correct." We conclude that Carter has failed to rebut that presumption.

As to Carter's claim of ineffectiveness in failing to object to the trial court's alleged vindictiveness at sentencing, we begin with the seminal case of *North Carolina v. Pearce*, 395 U.S. 711 (1969). There, the Court considered the extent to which "the Constitution limit[s] the imposition of a harsher sentence after conviction upon retrial." *Id.* at 713. Although "neither the double jeopardy provision nor the Equal Protection Clause imposes an absolute bar to a more severe sentence upon reconviction," *id.* at 723, the Court concluded that due process precludes imposing a penalty upon a "defendant for having successfully pursued a statutory right of appeal or collateral remedy," *id.* at 724. The Court declared that due process "requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725. In *United States v. Goodwin*, the Supreme Court noted that in *Pearce* it had "applied a presumption of vindictiveness, which may be overcome only by

6

objective information in the record justifying the increased sentence." 457 U.S. 368, 374 (1982). "[W]here the presumption applies, the sentencing authority . . . must rebut the presumption that an increased sentence . . . resulted from vindictiveness; where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness." *Wasman v. United States*, 468 U.S. 559, 569 (1984).

In *Alabama v. Smith*, 490 U.S. 794 (1989), the Supreme Court revisited what had become known as the *Pearce* "presumption." In *Smith*, the defendant had not been sentenced following a retrial but instead had received a longer sentence after a trial which followed vacatur on appeal of a guilty plea. In reviewing its precedent, the Court reiterated that it had "limited [*Pearce*'s] application" to "[s]uch circumstances [as] those in which there is a 'reasonable likelihood,' that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." *Id.* at 799 (omitting citation). "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness." *Id.* (citing *Wasman*, 468 U.S. at 569). The Supreme Court held that "no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." *Id.* at 795. In reaching its holding, the Court explained that the circumstances were not reasonably likely to have resulted from vindictiveness because the sentencing judge knew more about the nature and extent of the charged crimes and the defendant's conduct after trial than he had known at the time of the earlier guilty plea. *Id.* at 801. Because "there [we]re enough justifications for a heavier second sentence," the Court concluded "that it cannot be said to be more likely than not that" the resentencing in *Alabama v. Smith* was motivated by vindictiveness. *Id.* at 802.

7

The procedural history of the case before us does not involve a resentencing which distinguishes it from the circumstances in *Pearce* and its progeny. The presumption, therefore, is not applicable here. Nor is this a case where there was a reasonable likelihood that the sentence imposed was attributable to vindictiveness. *See Alabama v. Smith*, 490 U.S. at 801. The Superior Court recognized as much in rejecting Carter's direct appeal asserting a claim of vindictive sentencing. That court observed that the 15 to 30 year term was part of a generous pretrial plea offer that Carter had rejected, and that Carter was lawfully sentenced to the 20 to 40 year term after entering a mid-trial open plea. *Commonwealth v. Carter*, No. 571 EDA 2009, at 4 (Pa. Super. Ct. March 22, 2010).

While we consider the presumption inapplicable here, the Supreme Court's teaching concerning actual vindictiveness remains relevant to Carter's claim of ineffectiveness. *See Wasman*, 468 U.S. at 569 (instructing that where the presumption does not apply, it is the defendant who "must affirmatively prove actual vindictiveness"); *see also United States v. Rodriguez*, 602 F.3d 346, 360 (5th Cir. 2010) (analyzing, even though presumption of vindictiveness did not apply, whether the defendant established a "due-process violation by showing *actual* vindictiveness"); *Waring v. Delo*, 7 F.3d 753, 758 (8th Cir. 1993) (concluding that presumption was not warranted, and proceeding to analyze whether defendant proved actual vindictiveness); *Johnson v. Vose*, 927 F.2d 10, 11 (1st Cir. 1991) (deciding that there was no actual vindictiveness after determining that defendant was "not entitled to the *Pearce* presumption"); *United States v. Lippert*, 740 F.2d 457, 460 (6th Cir. 1984) (rejecting automatic application of *Pearce* to "post-plea-bargain sentencing proceedings," and concluding that defendant failed to establish actual vindictiveness).

We conclude that relief under § 2254(d) should not be granted because the Superior Court's decision was neither contrary to nor an unreasonable application of clearly established Supreme Court law. The Superior Court rejected Carter's vindictiveness claim on direct appeal. *Commonwealth v. Carter*, No. 571 EDA 2009, at 4. In addressing his ineffective assistance claim, the Superior Court analyzed neither the performance nor the prejudice prong of the ineffectiveness claim, choosing instead to address the vindictiveness aspect of the underlying claim. To that end, the Court's decision appropriately highlighted the procedural posture of Carter's case—the entry of an open plea. The entry of that plea, coming as it did after two days of testimony, unmistakably resulted in the sentencing judge's having more information than she had after the initial pretrial plea-offer. Indeed, the sentencing judge focused on information she learned after the initial plea offer, *i.e.*, the nature of the crime, Carter's credibility and his perceived attempt to manipulate her. Those considerations are appropriate for calculating a sentence, and nothing about them suggests vindictiveness. Accordingly, we are hard pressed to conclude that the Superior Court's rejection of Carter's ineffectiveness claim based on vindictiveness was unreasonable. *See Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold."); *see also Williams v. Taylor*, 529 U.S. 362, 410 (2000) ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law").

For the reasons set out above, we will affirm the judgment of the District Court.

9