[Cite as *State v. Long*, 2023-Ohio-1952.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellee, | : | |
| | : | No. 20AP-90 |
| v. | : | (C.P.C. No. 15CR-3564) |
| Michael A. Long, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on June 13, 2023

**On brief:** *G. Gary Tyack*, Prosecuting Attorney, and *Paula M. Sawyers*, for appellee. **Argued:** *Paula M. Sawyers*.

**On brief:** *Timothy Young*, Ohio Public Defender, and *Addison M. Spriggs*, for appellant. **Argued:** *Addison M. Spriggs*.

APPEAL from the Franklin County Court of Common Pleas

DORRIAN, J.

{¶ 1} In 2016, defendant-appellant, Michael A. Long, was convicted, following a jury trial, of aggravated burglary, kidnapping, aggravated robbery, felonious assault, murder, attempted grand theft of firearms, and having a weapon while under disability ("WUD"). All but the WUD count included firearm specifications.[1] Appellant elected to have the WUD tried by the court. The trial court sentenced appellant to an aggregate prison term of 25 years to life. On direct appeal, this court rendered a decision reversing and remanding the matter for a new trial based on the trial court's violation of appellant's Sixth

---

[1] The aggravated burglary, kidnapping, aggravated robbery, felonious assault, and murder counts carried three-year firearm specifications; the attempted grand theft of a firearm count included a one-year firearm specification.

Amendment right to a public trial. *State v. Long*, 10th Dist. No. 16AP-708, 2017-Ohio-9322 ("*Long I*").

{¶ 2} After the judge who presided over appellant's jury trial was elected to this court, another judge was appointed to preside over appellant's trial on remand. Appellant voluntarily waived and relinquished his right to a jury trial, electing the matter to be heard by the court. Appellant was convicted on all charges and attendant firearm specifications, with the exception of the firearm specification accompanying the murder charge. The trial court sentenced appellant to an aggregate prison term of 64 years to life.

{¶ 3} This court affirmed appellant's convictions on direct appeal. *State v. Long*, 10th Dist. No. 20AP-90, 2021-Ohio-2656 ("*Long II*"). On May 18, 2022, this court granted appellant's application for reopening of his appeal for the limited purpose of allowing review of appellant's claim that he received ineffective assistance of appellate counsel for failing to raise an argument regarding vindictive sentencing. *State v. Long*, 10th Dist. No. 20AP-90, 2022-Ohio-1601 ("*Long III*").[2] The matter is now before us on reopening. For the following reasons, we confirm our prior judgment affirming the convictions.

## I. Facts and Procedural History

{¶ 4} The evidence and testimony presented at appellant's bench trial are set forth in *Long II* at ¶ 2-14. In brief, early in the morning of July 17, 2015, Jill Mathias-Bowles ("Jill"), her husband Timothy Bowles, Sr. ("Tim"), and their son Shawn Bowles ("Shawn") returned home from work and discovered another family member, Timothy Bowles, Jr. ("Timmy") tied up in the basement. Timmy had been beaten and was unconscious. Jill, Tim, and Shawn encountered appellant and another man, Clement Cooper ("Poncho") attempting to steal several guns from a basement bedroom. A physical altercation between the Bowles, appellant, and Poncho resulted in Jill being shot by appellant, Tim being struck by a gun wielded by appellant, and Shawn being stabbed multiple times by a screwdriver Poncho had extracted from his pocket while being restrained by Shawn in a chokehold. Poncho died from asphyxia resulting from the chokehold.

---

[2] In a journal entry filed July 11, 2022, this court granted appellant's motion to add an additional assignment of error. However, subsequently we granted an application to reconsider filed by plaintiff-appellee, State of Ohio, and denied appellant's motion. *State v. Long*, 10th Dist. No. 20AP-90 (Aug. 16, 2022) (memorandum decision).

{¶ 5}   In addition to the facts underlying appellant's convictions, we set forth the following procedural history relevant to the argument appellant advances in his reopened appeal.  Following this court's remand in *Long I*, the judge who presided over appellant's jury trial became aware of various social media postings made by appellant's mother, Margaret Long ("Ms. Long"), related to the trial proceedings and/or the trial participants. Concerned that continued postings of a similar nature could potentially jeopardize appellant's right to a fair trial, the court issued an order barring and prohibiting trial participants and their extended families, persons acting in concert with trial participants and their families and/or persons acting at the behest of or as agents of trial participants and their families from posting on social media platforms any discovery from the case, anything obtained through attorney-client communications, and any express or implied threats against former jurors, witnesses, attorneys, and court personnel associated with the case.[3]  The court advised that the order would remain in effect until a verdict was reached in the second trial and that any violation of the order could result in a contempt finding, a jail sentence, a monetary fine, criminal charges, or other appropriate sanctions.

{¶ 6}   On September 13, 2018, the trial court issued a notice to Ms. Long ordering her to personally appear on September 19, 2018 and show cause as to why she should not be held in contempt for violating the court's July 12, 2018 order.  In a separate entry entered the same day, the court appointed counsel to represent Ms. Long. After Ms. Long failed to appear for the contempt hearing, the court issued a warrant for her arrest.  Ms. Long eventually turned herself into authorities.  Following an October 3, 2018 hearing, the trial court found Ms. Long in contempt and sentenced her to 20 days in jail, with 9 days of jail-time credit.  The October 3, 2018 order specified that the July 12, 2018 order would remain in effect through the conclusion of appellant's trial.  Subsequent to this hearing, the judge was elected to the appellate bench, and the case was then reassigned to a successor judge.

{¶ 7}   On August 6, 2019, plaintiff-appellee, State of Ohio, filed a motion to show cause for contempt against Ms. Long for continued violations of the July 12, 2018 order. The successor court held a hearing on the motion on September 10, 2019.  The court heard arguments concerning the validity of the court's July 12, 2018 order restricting the actions

---

[3] The order defined "families" as "including but not limited to mothers, fathers, brothers, sisters, aunts, uncles, cousins, grandparents, children, nephews, nieces and siblings-in-law."  (July 12, 2018 Order at 5.)

of non-parties and, relatedly, whether contempt proceedings were an appropriate enforcement mechanism. The state presented exhibits as to the alleged offending social media postings. At the conclusion of the hearing, the court asked the parties to submit briefs on the legal issues and ordered that the exhibits were to be filed under seal to protect appellant's Sixth Amendment rights. The parties submitted their post-hearing briefs on September 27, 2019.

{¶ 8} On October 24, 2019, the trial court held a hearing in appellant's criminal case at which it addressed, as relevant here, appellant's written waiver of his right to a jury trial and his election to be tried by the court.[4] Thereafter, appellant's bench trial commenced on October 29, 2019. Prior to the presentation of evidence, the trial court noted Ms. Long had indicated to the court that she had obtained "power of attorney" over appellant and wished to fire appellant's counsel. During a colloquy with both appellant and Ms. Long, the trial court cautioned Ms. Long against posting comments on social media about the upcoming trial. Ms. Long indicated she would try to control her emotions over the course of the trial. The trial court noted Ms. Long's tendency to speak before thinking and advised her to remain calm during the proceedings. Ms. Long agreed and told the judge "you never gave me no bad vibe." (Oct. 29, 2019 Tr. at 66.) The trial then commenced. After the state presented its first witness, the court and the parties agreed to resume trial on December 16, 2019.

{¶ 9} In the interim, on November 18, 2019, the state filed a motion to show cause for contempt against Ms. Long for continued violations of the July 12, 2018 order. The trial court held a hearing on the motion on December 3, 2019. At the outset of the hearing, the court noted that one of Ms. Long's recent social media posts referenced the court, and, as a result, the matter had been referred to the Franklin County Sheriff's Office. Following an off-the-record discussion with the common pleas court administrative judge, the trial court indicated it would refer the contempt matter to a visiting judge of the common pleas court for hearing on January 21, 2020. Noting the state's objection, the trial court averred "[w]e have to avoid the appearance of impropriety. * * * I'm not taking this lightly. I think I can be completely fair and impartial but that's not the question here. It's what the appearance is." (Dec. 3, 2019 Tr. at 6-7.) The court further asserted that because appellant had elected

---

[4] Appellant's jury waiver was filed October 24, 2019.

to be tried by the court, "I have a young man's life in my hands * * * [a]nd to be quite frank with you, I don't want anything to interfere with that." (Dec. 3, 2019 Tr. at 10.) Referencing Ms. Long's actions, the court stated "I would just as soon get it out of the mix.  My chief concern is not her, it's Michael." (Dec. 3, 2019 Tr. at 11.)[5]

{¶ 10} Appellant's trial resumed on December 16, 2019. During defense counsel's cross-examination of Jill on December 17, 2019, the court paused the proceedings, and the following colloquy between the court, a courtroom deputy, Ms. Long, and the prosecutor occurred:

> THE DEPUTY: Out of the courtroom.
>
> MS. LONG: Huh-uh.
>
> THE DEPUTY: Out of the courtroom.
>
> THE COURT: You can go voluntarily or they can take you the other way.
>
> MS. LONG: This is bullshit.  I'm already going to call the reporters anyhow on you.
>
> THE COURT: Well, call the reporters then, ma'am.
>
> Just for the record, she's been sitting behind the prosecution the whole thing [sic] making faces during testimony toward several of the witnesses.
>
> I had alluded this to the deputies during the lunch hour.  They were watching it.  They were directed if it continues, she was to be warned once and then she would be removed or held in contempt.
>
> * * *
>
> * * * [H]er actions during testimony, she would make sure that she was behind - - several times you [the prosecutor] maneuvered so that you would block her.  She would only move again.  She was constantly making faces.
>
> Now, deputies, let me ask a question.  Did you see the same thing I was seeing - -

---

[5] The entry of transfer was signed by the trial judge and the administrative judge on December 18, 2019; the entry was filed January 21, 2020.

THE DEPUTY: Yes.

THE COURT: - - where she was making faces towards the witnesses?

THE DEPUTY: Yeah, that was my third time actually saying something to her.

THE COURT: Okay. Anything else for the record?

[THE PROSECUTOR:] And, Judge, we were just trying to position ourselves so our witnesses felt comfortable and not threatened by her actions, Your Honor.

(Dec. 17, 2019 Tr. at 633-34.)

{¶ 11} A discussion followed as to Ms. Long's need to assist her blind son (appellant's brother) in exiting the courtroom. The court assured Ms. Long someone would take her son to her. Although the record does not reveal Ms. Long's response to the court's statement, the record does note an exchange between appellant and Ms. Long wherein appellant implores Ms. Long to "just chill for me" and Ms. Long replies, "I'm doing it for you." (Dec. 17, 2019 Tr. at 636.) Thereafter, the court asserted, "[l]et's take [appellant] out. Let's take a recess, chill for a minute." (Dec. 17, 2019 Tr. at 636.) Addressing the courtroom deputy, the court averred, "[o]ne more outburst and just take her. * * * She can leave the building. If she so much as comes through those doors trying to enter back in through the other doors, just arrest her, bring her in front of me, we'll do a summary hearing right now, we'll call Mr. Gatterdam [Ms. Long's appointed counsel in the contempt proceedings], I will put her in jail for the night, and then we can have the contempt proceeding tomorrow." (Dec. 17, 2019 Tr. at 636-37.)

{¶ 12} The court then asked the courtroom deputy if appellant was distraught about what had transpired with Ms. Long. After the deputy indicated appellant was probably upset, the court granted defense counsel's request to confer with appellant. Following a brief recess, defense counsel and the prosecutor completed their questioning of Jill. Thereafter, the trial court told appellant's brother to advise Ms. Long that she would be permitted back in the courtroom only after the trial court consulted with her appointed counsel. The court then discussed Ms. Long's behavior with appellant, stating, "[y]ou're here for your life, and I'm worried that her priorities are more about the fight than it is

about your life. * * * Right now I care about your rights. Okay? And I will do so here, but she doesn't need to be disruptive." (Dec. 17, 2019 Tr. at 653-54.)

{¶ 13} Continuing, the court stated, "[Appellant], here's my problem. * * * I've got multiple jobs in this situation. I'm to protect your rights. I'm to protect the safety of everybody in this room. Those are the people that help me. * * * I got to deal with witnesses. Now, you can say what you want. I watched your mom all day along over there. * * * And she can't help herself sometimes I don't think. * * * I think she thinks she's doing the right thing and she doesn't realize how it's coming off. * * * I'm worried that her actions are disrupting your ability to have a fair trial and I'm not going to have it. * * * You've got a tough situation here and you need all the benefits you can get. * * * And I don't know what legal advice she's giving you, but you need to think things through." (Dec. 17, 2019 Tr. at 656-57.) Thereafter, trial was adjourned until the next morning, December 18, 2019.

{¶ 14} Prior to the presentation of evidence on December 18, 2019, the trial court noted for the record that Ms. Long's counsel had been apprised of the previous day's events. The court informed the courtroom deputies that Ms. Long was not permitted inside the courtroom until the court heard from her counsel. Addressing appellant, the trial court averred "I was not happy with [Ms. Long's] actions yesterday. She was being disruptive and, you know, she's excluded for now, until [her counsel] can come to me after our discussions and explain to me why I should let her back in." (Dec. 18, 2019 Tr. at 693-94.)

{¶ 15} Trial resumed and continued until the trial court rendered judgment on the record on the last day of trial, January 16, 2020. After the court rendered its judgment, Ms. Long interjected, "You know this is bullshit." (Jan. 16, 2020 Tr. at 1025.)[6] The court averred, "Whoa, ma'am. Why don't you take your son and go." (Jan. 16, 2020 Tr. at 1025.) Addressing appellant, Ms. Long stated "Michael. Michael, don't worry." (Jan. 16, 2020 Tr. at 1026.) Thereafter, the court told Ms. Long, "You say another word, ma'am, and you're going in." (Jan. 16, 2020 Tr. at 1026.) Appellant interjected, "Please don't, mom." (Jan. 16, 2020 Tr. at 1026.)

---

[6] The record does not establish on what date or under what circumstances Ms. Long was permitted to return to the courtroom.

{¶ 16} The trial court held a sentencing hearing on February 3, 2020, during which it permitted Ms. Long to make a statement on behalf of appellant.[7] Ms. Long began by questioning some of the evidence the state presented at trial. When defense counsel attempted to interject, Ms. Long told him to "[p]lease get out of my face," and to "[l]et me speak." (Feb. 3, 2020 Tr. at 17.) The trial court informed Ms. Long she would be permitted to speak and that she should direct her comments to the court and not the courtroom gallery. Ms. Long then stated, "Mikey is innocent and they know he is. They covering up for Timmy and them. It don't make no sense. This is this white privilege shit that - - that's why black people don't want to come up in these mother fucking courtrooms * * * because they can never get a fucking fair trial." (Feb. 3, 2020 Tr. at 18.) The trial court responded, "Enough. Wait a minute" and told Ms. Long to "[t]urn back around." (Feb. 3, 2020 Tr. at 19.) Ms. Long stated, "No, I'm done" to which the trial court replied, "No, you're not." (Feb. 3, 2020 Tr. at 19.)

{¶ 17} Ms. Long then stated: "Give him his (inaudible) so we can file his fucking appeal." (Feb. 3, 2020 Tr. at 19.) At this point, appellant told Ms. Long, "He talking to you. Just come and talk to him." (Feb. 3, 2020 Tr. at 19.) The trial court averred, "It's okay. Let her go pout." (Feb. 3, 2020 Tr. at 19.) Addressing appellant, Ms. Long asserted: "He already said I threatened him. * * * He should have been pulled off your case when he said I threatened him." (Feb. 3, 2020 Tr. at 19.) The trial court then stated, "Okay. Chill." (Feb. 3, 2020 Tr. at 19.)

{¶ 18} Later in the proceeding, Jill and Ms. Long exchanged heated words which ultimately led to an admonishment by the courtroom deputy that continued argument could result in the ejection of both women from the courtroom. Thereafter, the court stated, "I sat through the trial, just so everybody knows. I watched the evidence. I listened to everybody intently." (Feb. 3, 2020 Tr. at 31.) The trial court ultimately imposed an aggregate sentence of 64 years to life.

## II. Assignment of Error

{¶ 19} In his reopened appeal, appellant assigns one error for our review:

> The trial court erred when it vindictively increased Mr. Long's sentence from 25-years-to-life imprisonment after a

---

[7] The trial court also allowed statements in support of appellant from Maddie Cooper Cunningham and Vanessa Arnold, Poncho's mother and aunt, respectively. Kimberly Bowles spoke on behalf of the victims.

successful first appeal to 64-years-to-life imprisonment. Sixth and Fourteenth Amendments, United States Constitution; Article I, Section X, Ohio Constitution.

## III. Analysis

{¶ 20} Once an appeal has been reopened, the appellant "must establish the merits of both the direct appeal and the claim for ineffective assistance of [appellate] counsel." *Long III* at ¶ 26. *See also State v. Leyh*, 166 Ohio St.3d 365, 2022-Ohio-292, ¶ 37 ("Under App.R. 26(B), the determination whether appellate counsel was deficient and prejudiced the applicant is to be made after the appeal has been reopened and the parties are afforded the opportunity to have counsel, transmit the necessary record, and substantively brief the issues."). In his single assignment of error, appellant addresses both the merits of his claim that the trial court imposed a vindictive sentence in violation of his due process rights and that appellate counsel was ineffective in failing to raise that issue.

{¶ 21} Regarding the merits of his claim, appellant first argues that the aggregate sentence imposed following his second trial (64 years to life) was presumptively vindictive, as it was more than 2.5 times longer than the aggregate sentence imposed following the first trial (25 years to life). Alternatively, appellant argues that even if the second sentence was not presumptively vindictive, it was the result of actual vindictiveness by the trial court. We disagree with both contentions.

{¶ 22} The Supreme Court of Ohio has recognized the United States Supreme Court's decision in *N. Carolina v. Pearce*, 395 U.S. 711 (1969), as holding that a sentence that punishes a defendant for successfully appealing a conviction is vindictive and therefore violates a defendant's due process rights and as further holding that to prevent vindictiveness from influencing a sentencing decision and to allay any fear on the part of a defendant that an increased sentence is in fact the product of vindictiveness, the sentencing judge must provide reasons for the increased sentence based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the

original sentencing proceeding.[8]  *See Beatty v. Alston*, 43 Ohio St.2d 126, 129-30 (1975), citing *Pearce* at 726.  "This rule has been read to '[apply] a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.' "  *Wasman v. United States*, 468 U.S. 559, 565 (1984), quoting *United States v. Goodwin*, 457 U.S. 368, 374 (1982).

{¶ 23} The Supreme Court has clarified *Pearce* however and held that the presumption of vindictiveness does not apply in every case where a convicted defendant receives a harsher sentence on retrial.  *Alabama v. Smith*, 490 U.S. 794, 799 (1989).  Instead, the presumption arises only in circumstances where there is a "reasonable likelihood" that an increased sentence is the product of vindictiveness on the part of the sentencing authority.  *Id.*, citing *Goodwin* at 374.  "Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness."  *Id.*, citing *Wasman* at 569.

{¶ 24} Of particular relevance here is the Supreme Court's decision in *Texas v. McCullough*, 475 U.S. 134 (1986), wherein it concluded that the presumption of vindictiveness is inapplicable where "different sentencers assess[] the varying sentences that [a defendant] receive[s]."  *Id.* at 140.  The court noted that "the presumption derives from the judge's 'personal stake in the prior conviction,' " which does not exist when the prior proceedings were conducted by a different judge.  *Id.* at 140, fn. 3, quoting *Chaffin v. Stynchcombe*, 412 U.S. 17, 27 (1973).  "[W]hen different sentencers are involved, '[it] may often be that the [second sentencer] will impose a punishment more severe than that received from the [first].  But it no more follows that such a sentence is a vindictive penalty for seeking a [new] trial than that the [first sentencer] imposed a lenient penalty.' "  *Id.*, quoting *Colten v. Kentucky*, 407 U.S. 104, 117 (1972).

{¶ 25}  In *State v. Hall*, 10th Dist. No. 09AP-302, 2009-Ohio-5712, this court noted that "Ohio courts have recognized that the presumption in *Pearce* has been narrowed by *McCullough*."  *Id.* at ¶ 16.  We particularly noted holdings to this effect by our sister districts

---

[8] In *Texas v. McCullough*, 475 U.S. 134 (1986), the Supreme Court clarified that "[t]his language [restricting the reasons to conduct occurring after the time of the original sentence], however, was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified. Restricting justifications for a sentence increase to *only* " 'events that occurred subsequent to the original sentencing proceedings' " could in some circumstances lead to absurd results." (Emphasis sic.) *Id.* at 141, quoting *Wasman v. United States*, 468 U.S. 559, 572 (1984).

in *State v. Smith*, 168 Ohio App.3d 141, 2006-Ohio-3720, ¶ 85 (1st Dist.) ("[w]here a different judge imposes a harsher sentence after an independent assessment, there is no true 'increase' in the sentence, and the vindictiveness presumption does not apply"); *State v. Howard*, 174 Ohio App.3d 562, 2007-Ohio-4334, ¶ 20 (2d Dist.) ("[t]he *Pearce* presumption of vindictiveness does not apply in this case because Defendant's current sentence was imposed by a judge different from the sentencer who had imposed the prior sentence"); and *State v. Goodell*, 6th Dist. No. L-07-1016, 2007-Ohio-5318, ¶ 18 (*Pearce* presumption of vindictiveness "does not apply where, as here, the resentencing judge is not the one who originally sentenced the defendant").  Because the resentencing judge was different than the original sentencing judge, we declined to apply the *Pearce* presumption of vindictiveness. *Hall* at ¶ 15, 17.  We followed *Hall* in *State v. Busby*, 10th Dist. No. 09AP-1119, 2010-Ohio-4516, ¶ 9 ("[a] different judge resentenced appellant in this case and, therefore, no presumption of vindictiveness arises"). Ohio courts have also found that in cases where a different judge imposes a harsher sentence on remand, the judge is not required to state reasons for doing so.  *Goodell* at ¶ 18, citing *State v. Gonzales*, 151 Ohio App.3d 160, 2002-Ohio-4937, ¶ 65 (1st Dist.); *State v. Johnson*, 2d Dist. No. 23297, 2010-Ohio-2010, ¶ 19, quoting *State v. Thrasher*, 178 Ohio App.3d 587, 2008-Ohio-5182, ¶ 14 ("[w]hen there is no presumption of vindictiveness to overcome, the *Pearce* requirements do not apply.  In such a case, we have determined, logically enough, that 'no explanation is required' to rebut a non-existent presumption"); *Lodi v. McMasters*, 31 Ohio App.3d 275 (9th Dist.1986) ("[b]ecause there were different sentencers, there is no presumption of vindictiveness and the [second] judge need not set forth the reasons for resentencing McMasters to an enhanced sentence.") *Id.* at 277.

{¶ 26} Appellant acknowledges that Ohio courts, including this court, have consistently found the *Pearce* presumption of vindictiveness inapplicable where, as here, the resentencing judge who imposes a harsher sentence is different than the original sentencing judge.  Nonetheless, appellant urges this court to apply the presumption of vindictiveness in this case because the aggregate sentence imposed following his second trial was significantly longer, i.e., more than 2.5 times longer, than the aggregate sentence imposed following his first trial, despite the fact that at the second trial he was convicted of one less firearm specification.

{¶ 27} In support of his argument, appellant relies on *State v. Clark*, 4th Dist. No. 1335 (Feb. 23, 1988). There, Clark was initially convicted of one count of kidnapping and two counts of rape. The trial judge sentenced Clark to concurrent sentences of 8-15 years on the kidnapping count and 9-25 years on each rape count. After Clark's convictions were reversed on appeal, a second trial was held before a new judge. Clark was convicted of two counts of rape and one count of abduction, a lesser-included offense of kidnapping. The new trial judge sentenced Clark to concurrent sentences of 5-10 years on the abduction count and 10-25 years on each rape count. In the aggregate, Clark received a 1-year increase in his sentence following his second trial.

{¶ 28} Citing *Pearce*, *McCullough*, and *Wasman*, the *Clark* court stated that "[t]he law clearly requires that before a judge may impose a more severe sentence after a new trial, the reasons for the increased sentence must affirmatively appear in the record. *Pearce* further requires that those reasons must be based upon conduct by the defendant since the time of the original sentencing." The court concluded that because the record revealed "no evidence of any conduct by [Clark] since the date of [the original] sentencing," the trial judge erred in imposing a greater sentence on Clark.

{¶ 29} We decline appellant's invitation to follow *Clark*. First, although the *Clark* court cited *McCullough*, it failed to recognize *McCullough's* determination that the presumption of vindictiveness does not apply when the original and resentencing judges are not the same. Second, *Clark* is not binding authority upon this court, as it is a decision from another appellate district. " ' "We are bound by the decisions of the Supreme Court of Ohio and generally, by past precedent produced by our own district." ' " *Dillon v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 22AP-392, 2023-Ohio-942, ¶ 59, quoting *Estate of Aukland v. Broadview NH, L.L.C.*, 10th Dist. No. 16AP-661, 2017-Ohio-5602, ¶ 21, quoting *Keytack v. Warren*, 11th Dist. No. 2005-T-0152, 2006-Ohio-5179, ¶ 51. As noted above, this court has declined to apply the *Pearce* presumption of vindictiveness where the resentencing judge is different than the original sentencing judge. *Hall*; *Busby*. Finally, the *Clark* case appears to be an outlier, as appellant has not pointed us to any other court citing *Clark* and our research has not revealed any other Ohio court citing *Clark*.

{¶ 30} Further, to the extent appellant contends we should apply the presumption of vindictiveness in this case simply due to the "alarmingly higher sentence" imposed by the

resentencing judge, we note appellant cites no authority, other than *Clark*, in support of this proposition. (Appellant's Brief at 13.) For the reasons outlined above, we decline to follow *Clark*. Further, this court will avoid promulgating any sentence disparity rule that would allow a criminal defendant to challenge a resentencing decision made by a second sentencer as per se vindictive solely because that sentence exceeded the sentence imposed by the original sentencer by x number of years. Such a rule would run afoul of *McCullough*[9] and its progeny, would undermine the resentencing court's discretion to impose a sentence based on its independent assessment of the record and which was within applicable statutory limits, and would prove imprudent and unworkable as a practical matter.

{¶ 31} Further, at least one Ohio court has rejected a presumptively vindictive sentence challenge where a second sentence imposed by a different judge was significantly higher than that imposed by the original judge. In *State v. Boyd*, 6th Dist. No. L-07-1095, 2009-Ohio-3803, the court reviewed a *Pearce* challenge to a resentencing that doubled the aggregate prison term of Boyd's original sentence. For his various convictions, Boyd initially received a total sentence of 20 years. *Id.* at ¶ 1. Boyd appealed and the court vacated that sentence pursuant to *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856. *Id.* Following remand, a different judge resentenced Boyd to an aggregate term of 40 years. *Id.* Citing *McCullough*, the court determined that the presumption of vindictiveness did not apply because different sentencers were involved and each assessed the varying sentences Boyd received. *Id.* at ¶ 18-20.

---

[9] We note that in *McCullough*, the second sentence imposed was 2.5 times higher than the first sentence imposed. In *McCullough*, the defendant was entitled by Texas law to be sentenced by either a judge or a jury. In the first trial, a jury found the defendant guilty of murder and, pursuant to the defendant's election, the jury sentenced him. The jury imposed 20 years in prison. The defendant filed a motion for a new trial based on prosecutorial misconduct, and the trial judge granted the same. In the second trial, a jury again found the defendant guilty of murder, however, pursuant to defendant's election, the trial judge sentenced him. The trial judge imposed 50 years in prison. We recognize that the case before us differs from *McCullough* in that it involves a new trial pursuant to reversal and remand on appeal rather than a successful post-trial motion. We also recognize that the Supreme Court in *McCullough* observed that the facts of the case provided no basis for a presumption of vindictiveness and commented specifically that the granting of the post-trial motion based on prosecutorial misconduct "hardly suggest[ed] any vindictiveness on the part of the judge towards [the defendant]." *McCullough* at 139. Finally, we recognize that the court noted that in imposing the 50-year sentence, the trial judge explained that at the second trial, she learned of new evidence from the testimony of two witnesses who had not previously testified. Nevertheless, *McCullough* does not address or express any concern with the 20-50 years, 2.5 times higher, disparity in the two sentences. In the case before us, the 25-64 years disparity in the two sentences was 2.56 times higher.

{¶ 32} Having determined that the presumption of vindictiveness does not apply in this case, we turn to appellant's alternative argument, i.e., that the increased sentence imposed by the trial court on remand resulted from actual vindictiveness. Absent a presumption of vindictiveness, appellant must demonstrate actual vindictiveness. *Busby* at ¶ 10, citing *Hall* at ¶ 17. In *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, the Supreme Court set forth the standard for determining whether a sentence imposed by a trial court resulted from actual vindictiveness:

> Having declined to presume that the trial court acted with vindictiveness, we begin our review of Rahab's sentence as we do in any other appeal—with the presumption that the trial court considered the appropriate sentencing criteria. [*State*] *v. O'Dell*, 45 Ohio St.3d [140] at 147, 543 N.E.2d 1220 [1989]. We then review the entire record--the trial court's statements, the evidence adduced at trial, and the information presented during the sentencing hearing—to determine whether there is evidence of actual vindictiveness. We will reverse the sentence only if we clearly and convincingly find the sentence is contrary to law because it was imposed as a result of actual vindictiveness on the part of the trial court. *See* R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E. 3d 1231, ¶ 1.

*Id.* at ¶ 19.

{¶ 33} Appellant asserts the sentence imposed by the trial court resulted from actual vindictiveness based upon: (1) the significant disparity in the aggregate sentences, and (2) the court's interactions with Ms. Long.

{¶ 34} As to the disparity in sentencing, we note that following the jury trial, the original judge merged Count 1 (aggravated burglary), Count 3 (aggravated robbery), and Count 7 (attempted theft of firearms) and imposed sentences of 4 years each on Count 1 and Count 5 (felonious assault of Shawn), 3 years each on Count 2 (kidnapping), and Count 4 (felonious assault of Jill), 15 years to life on Count 6 (murder of Poncho), 18 months on Count 8 (WUD), and 3 years on each of the firearm specifications accompanying Counts 1, 2, 4, 5, and 6. The court ordered the sentences imposed on Counts 2, 4, 5, 6, and 8 to be served concurrently with each other and consecutively to Count 1. The court further ordered the sentences imposed on the firearm specifications accompanying Counts 2, 4, and 5 to be served concurrently with each other and with Counts 1 and 6, with those 2

firearm specifications to be served consecutively to each other. The total sentence was 25 years to life.

{¶ 35} Following the bench trial, the successor judge merged Counts 1 and 7, imposed sentences of 8 years each on Counts 1, 2, and 3, 5 years each on Counts 4 and 5, 15 years to life on Count 6, 36 months on Count 8, and 3 years on each of the firearm specifications accompanying Counts 1, 2, 3, 4, 5, and 6. The court ordered the sentences imposed on Counts 1, 2, 3, 4, 5, and 6 to be served consecutively to each other and concurrently with the sentence imposed on Count 8. The total sentence was 64 years to life.

{¶ 36} Here, appellant does not dispute that in imposing sentence, the trial court considered the appropriate sentencing criteria, including the purposes and principles of sentencing set forth in R.C. 2929.11, the factors set forth in R.C. 2929.12, weighed the factors set forth in R.C. 2929.13 and 2929.14, and set forth its reasons for imposing consecutive sentences as required by R.C. 2929.14(C). Nor does appellant dispute that the sentences imposed on each of the offenses were within applicable statutory limits. *See* R.C. 2929.14(A). Appellant simply argues that the significantly higher aggregate sentence evinces actual vindictiveness by the trial court.

{¶ 37} On resentencing, a trial court is not bound to the original sentencing considerations. *State v. Hoover*, 7th Dist. No. 20 BE 0002, 2021-Ohio-2485, ¶ 30. "The resentencing court retains the discretion to review the entire record before imposing sentence." *Id.* Here, the trial court presided over the bench trial conducted after remand, reviewed appellant's record, independently weighed the appropriate principles and purposes of sentencing, and ultimately concluded that a prison sentence totaling 64 years to life was appropriate. Judges may differ in their philosophies on sentencing, and we decline to find actual vindictiveness simply because a successor judge may have a different sentencing philosophy than his or her predecessor. As noted above, when a second sentencer imposes a greater penalty, "it no more follows that such a sentence is a vindictive penalty * * * than that the [first sentencer] imposed a lenient penalty." *Colten* at 117.

{¶ 38} Appellant also contends the trial court's multiple interactions with Ms. Long throughout the contempt proceedings, the bench trial, and the sentencing hearing demonstrates actual vindictiveness by the trial court in sentencing appellant.

{¶ 39} As a threshold matter, we note that "[a]ctual vindictiveness implies an animus against a defendant because he or she exercised his or her right of appeal which resulted in the reversal of the prior conviction based upon an error made by the sentencing judge." *Boyd* at ¶ 15. Appellant points to no authority establishing that a trial court's interactions with a defendant's family member (or any other non-party supportive of a defendant) during or ancillary to the defendant's criminal proceedings may constitute actual vindictiveness by a trial court in imposing sentence upon the defendant.

{¶ 40} Further, nothing in the record convinces this court that the trial court's interactions with Ms. Long had any bearing on the trial court's sentencing decision. During its initial interaction with Ms. Long on the first day of trial, the court merely advised her to obey the court order against posting about appellant's case on social media and to keep her emotions in check during trial. The court's next interaction occurred during Ms. Long's contempt hearing. After discovering that one of her social media postings referenced him, the court immediately recused itself from the ongoing contempt proceedings. In so doing, the court noted that although it believed it could fairly and impartially adjudicate both appellant's trial and the contempt proceedings, it chose to recuse to avoid even an appearance of impropriety. The court noted that it held appellant's life in its hands and that its chief concern was appellant, not Ms. Long.

{¶ 41} The court's interactions with Ms. Long continued during trial. During the testimony of one of the prosecution witnesses, the trial court paused the proceedings to discuss Ms. Long's behavior. Noting that Ms. Long had been making faces at the prosecution witnesses, the court barred her from the courtroom and ordered the courtroom deputy to arrest her if she tried to re-enter. During a discussion with appellant about Ms. Long's disruptive behavior, the court expressed its fear that Ms. Long was prioritizing her "fight" over appellant's "life," and that her actions had the potential to affect appellant's right to a fair trial. However, the court assured appellant it would protect his rights. When the trial court rendered its judgment on the last day of trial, Ms. Long responded inappropriately, uttering an expletive. In response, the trial court respectively addressed Ms. Long as "ma'am" and cautioned her that further disruptions would result in her being jailed.

{¶ 42} Interactions between the trial court and Ms. Long continued during the sentencing hearing. The trial court provided Ms. Long an opportunity to speak on behalf of appellant. Using profanity, Ms. Long expressed her belief that the trial proceedings were tainted because the Bowles family is Caucasian and appellant is African American. When the trial court directed a comment to Ms. Long, she stated she was "done," to which the trial court replied, "No, you're not." Thereafter, again using profanity, Ms. Long alluded to a potential appeal to be filed by appellant. After appellant asked Ms. Long to address the court, the court interjected, "Let her go pout." Referring to her contempt proceedings, Ms. Long stated that the judge should have been removed from appellant's case when the judge said she threatened him. The trial court's only response to this statement was "Okay. Chill."

{¶ 43} Even if the interactions between the trial court and Ms. Long could be considered contentious, the record contains no indication that those interactions influenced the trial court's sentencing decision in any way. The trial court did not mention Ms. Long when imposing sentence upon appellant, nor did the court express or exhibit personal hostility or ill will toward appellant stemming from Ms. Long's behavior. Indeed, the record reveals assertions by the trial court indicating its desire and obligation to afford appellant a fair trial. Further, at the sentencing hearing, the trial court noted that it "sat through the trial," "watched the evidence," and "listened to everybody intently." These statements signal that the trial court fashioned its sentencing decision in accordance with the evidence presented during the trial, and not as the result of a vindictive motivation to punish appellant for Ms. Long's behavior.

{¶ 44} After a thorough review of the entire record, we cannot clearly and convincingly find that the sentence imposed upon appellant was a result of actual vindictiveness on the part of the trial court. *Rahab* at ¶ 19.

{¶ 45} In the second part of his assignment of error, appellant asserts his prior appellate counsel was ineffective during his direct appeal for not presenting an assignment of error asserting that the trial court imposed a vindictive sentence in violation of his due process rights. Appellate counsel has wide latitude in determining which issues and arguments will be most effective on appeal and is not required to argue meritless assignments of error. *State v. Williams*, 10th Dist. No. 18AP-891, 2023-Ohio-1002, ¶ 36, citing *State v. Lee*, 10th Dist. No. 06AP-226, 2007-Ohio-1594, ¶ 3. As explained above, we

conclude that the sentence imposed by the trial court was not vindictive. As such, appellant's prior appellate counsel was not ineffective in failing to assert a meritless claim. *Id.* (concluding appellate counsel was not ineffective in failing to raise a meritless claim).

{¶ 46} Because appellant has failed to establish the trial court imposed a vindictive sentence in violation of his due process rights and that his prior appellate counsel was ineffective in failing to present an assignment of error asserting that meritless claim, we overrule appellant's single assignment of error.

## IV. Conclusion

{¶ 47} For the foregoing reasons, we overrule appellant's single assignment of error and, pursuant to App.R. 26(B)(9), confirm our prior judgment in *Long II* affirming the judgment of the Franklin County Court of Common Pleas.

*Judgment confirmed.*

LUPER SCHUSTER and MENTEL, JJ., concur.

———————————